## SHEFFIELD *et al. v.* CHANCY *et al.*

Inasmuch as the injunction granted in the present case may have the effect of preventing the county authorities from levying a tax necessary to discharge the legal indebtedness of the county, and as the judgment granting the injunction was based upon an erroneous construction of the law appertaining to the controlling question involved in the case, the judgment is reversed and the case remanded for another hearing, in order that the judge below may modify the injunction so that it will not prevent the enforcement of item 1 of the tax levy to an extent necessary to discharge the accumulated debts of the county legally incurred within the limitation prescribed in § 507 of Civil Code of 1910.
OCTOBER 2, 1912.

Injunction. Before Judge Worrill. Early superior court. December 14, 1911.

John C. Chancy, C. S. Middleton, and R. H. Sheffield, citizens and taxpayers of Early County, brought their petition against the board of commissioners of roads and revenues for said county, consisting of Sheffield and others, and against J. J. Smith, treasurer, and J. C. Loyless, tax-collector, and prayed for an injunction against the collection of certain items of the tax levy for the year 1911, alleged to be illegal and exorbitant. The tax levy attacked is as follows:

"1. To pay indebtedness due, or to become due, during the year, or past due, 2 mills. 2. To build or repair court-house or jail, bridges or ferries, or other public improvement, according to contract, 2 mills. 3. To pay sheriffs, jailers, or other officers fees they may be legally entitled to, out of county, 8/10 mills. 4. To pay coroners all fees that may be due them by the courts, 1/10 mills. 5. To pay the expenses of the county for bailiffs at court, non-resident witnesses in criminal cases, fuel, servants hire, stationery and the like, 1/10 mills. 6. To pay jurors a per diem compensation, 75/100 mills. 7. To pay expenses incurred in supporting the poor of the county, as otherwise prescribed by the code, 1 mill. 8. To pay any lawful charge against the county, 25/100 mills. 9. To open up, improve, and maintain the public roads, 4 mills.

"In addition to the above assessment, it is hereby ordered that the tax-collector shall collect from the respective school districts herein named the amount opposite the name of each district, for the purpose of supplementing the State school funds in support of the public schools in each district, where such tax is levied: Rock

Hill district, 1½ mills.    Sowatchee district, 3 mills.    Cedar Springs district, 3 mills.    Springfield district, 5 mills.    Centerville district, 3 mills.    Kestler district, 2½ mills."

It is alleged: that the amount of taxes levied, exclusive of the tax for public roads, for the support of paupers, and for public bridges and buildings, is 4 mills, which is 1½ mills in excess of fifty per cent. upon the State tax of 5 mills; that a tax of 5/10 of one mill upon the taxable property of the county would raise a sum sufficient to discharge the liabilities of the county for the current year for its poor, and an equal amount will be sufficient to build, repair, and maintain the public buildings and bridges; that it is the intention of the tax-collector to collect the amounts raised under the levy and turn the same over to the county treasurer; and that it is the intention of the treasurer to mingle all the sums collected for the various purposes set forth in the levy into one common fund, and to pay county warrants out of the common fund, without keeping the fund separate and paying the sums collected for a specific purpose only upon the obligations contracted for the specific purpose.    The defendants answered, that the County of Early was indebted, on January 1, 1911, "exclusive of about $3,000.00 to the First National Bank of Arlington," in the sum of $12,921.55, as follows:

To Dr. J. H. Crozier, borrowed money ......$ 2,080.00
To Mrs. R. A. Chipstead, borrowed money....   1,000.00
To bonds and interest due Jan. 1, 1911 ......   3,250.00
To Good Roads Machine Co. (contract) .....   2,000.00
To Disinfectant Co. (open account 1910) ....   1,046.00
To Bank of Arlington .....................   3,081.00

$15,632.95

It was further answered: that the revenues for public buildings, bridges, etc., under the levy for the year 1911, would be $9,257.80; that the commissioners had expended in that year, in the erection of bridges, $2,030.00, according to an itemized statement attached, for·repairing the court-house $325, in repairs on bridges $1,000, none of which building and repairing items exceeded $300, said building and repairing having been done with the material and labor furnished by the defendants; that there are certain other bridges over named streams and designated places which in the

aggregate will cost $9,600, which must be erected as soon as funds are collected for that purpose and in the early part of 1912; that there were no funds on hand for the purpose of meeting the expenses incurred for maintaining the poor of the county on January 1, 1911; that the levy for 1910 for paupers was $534.18 less than the amount expended for said purpose, and that the commissioners borrowed $1,945.35 with which to maintain the poor of the county for the year 1911; that there is now outstanding against the county this obligation and $339 in unpaid warrants issued to the parties themselves, an itemized statement of which warrants is attached to the answer; that the rate of increase in the expenses of maintaining the paupers of said county for the last three years has been about forty per cent. per annum; that the amount raised in the present levy is not enough to meet the monthly payments to the paupers of the county as they become due between now and the next tax levy for this specific purpose. . It is admitted that the tax-collector intends to collect the taxes as levied, under the law, and turn the same over to the treasurer of the county, but it is denied that it is the intention of the treasurer to mingle the funds collected for specific purposes into one general fund, as charged in the petition.

The plaintiffs offered evidence showing that the grand jury of the county, during the spring term, 1911, made no recommendation with regard to the levying of any taxes for the year 1911, nor had any prior or subsequent grand jury convening in said county during the year 1911 made any recommendation in regard to the levying of taxes. The defendants introduced affidavits of J. J. Smith, treasurer of the county, showing that there was an indebtedness against the county, on January 1, 1911, for debts incurred by the county during the year 1910 and becoming due during the year 1911, aggregating $15,512; that at the beginning of the year 1911 there was nothing to the credit of the pauper fund of the county; that the county commissioners had to borrow money with which to meet the current expenses of the year; that the expense of maintaining the poor was a part of the current expenses; that this money was borrowed of Mrs. Chipstead and Dr. Crozier; that of this borrowed money there was used enough to pay off the warrants issued to the paupers, which amount represents all moneys paid to paupers for the year 1911, and the balance of $339 is

now outstanding, unpaid by the treasurer; that the amount of said money borrowed for the current expenses from the above-named parties, spent or used in paying warrants to the county paupers, was $1,945.35, which sum has not been paid to the parties from whom it was borrowed, and is now outstanding against the county; "that the sums of money borrowed the present year by the County of Early through its board of commissioners of roads and revenues from Mrs. R. A. Chipstead and J. H. Crozier was not paid out for the special purpose of supporting paupers, and it was not deposited with deponent to be paid out for the specific purpose of supporting the paupers, but was held as a general fund and was paid out on the county's warrants as they were presented to deponent, first presented being first paid, without regard to the nature of the liability which the warrant was given to discharge, some being paid out generally for the expenses of the county as they arose, and all done by order of said county commissioners."

The court rendered the following judgment: "It appears affirmatively from the pleadings and the evidence in this case that the board of commissioners of roads and revenues of Early County, in making the assessment of taxes for that county for the year 1911, not only made assessments of taxes for public buildings and bridges, and also for the support of the poor, authorized to be collected as extra taxes, and taxes for improving and maintaining the public roads, and also for educational purposes, but also, in addition thereto and over and above the assessment, made other assessments of taxes for the purposes enumerated under subsections 1, 3, 4, 5, 6, and 9 of section 513 of the Civil Code of 1910, which last-mentioned assessments amounted in the aggregate to four mills, and to one and one half mills in excess of fifty per cent. upon the State tax of five·mills. It also affirmatively appears that such assessment was made by the board of commissioners without the recommendation of the grand jury. This being true, I conclude that under the provision of section 508 of the Civil Code, and the ruling of the Supreme Court in *Waller* v. *Perkins,* 52 *Ga.* 238-9, and *Sullivan* v. *Yow,* 125 *Ga.* 327, the commissioners of roads and revenues of Early County, in the absence of a recommendation by the grand jury authorizing it, were without authority to assess said sum of four mills on the amount of the State tax, and that said excess of one and one half mills over and above the

sum of fifty per cent. on the amount of State tax is unauthorized and illegal. It is therefore ordered, considered, and adjudged that J. C. Loyless, the tax-collector of Early County, be and he is hereby enjoined and restrained from collecting as county taxes for the present year, exclusive of said extra and special taxes so assessed and which are not interfered with, any sum so assessed by said commissioners for said county taxes for Early for the present year in excess of (2½) two and one half mills, or fifty per cent. upon the State tax."

*Byron R. Collins, Glessner & Park,* and *Little & Powell,* for plaintiffs in error. *R. H. Sheffield,* contra.

BECK, J. (After stating the facts.) The important and controlling question involved in this case is, whether the levying of a tax to pay accumulated debts is one of those included in the provision for recommendation by the grand jury, or whether the ordinary or county commissioners can levy it without regard to any recommendation of the grand jury. This question involves the determination of whether § 507 of the Civil Code of 1910 is to be construed in connection with and as affected by §§ 508 and 510. Without going back of the Code of 1863 to determine the origin of the legislation involving these sections, their status and history from that time may be considered with a view to reaching a proper construction of them.

In the original code the levy of taxes for certain specified purposes, such as the erection of court-houses, jails, etc., was authorized without recommendation of the grand jury. By § 481 of that code it was declared: "Justices of the inferior court have power to raise a tax for county purposes, over and above the tax they are hereinbefore empowered to levy, and not to exceed fifty per cent. upon the amount of the State tax for the year it is levied, provided two-thirds of the grand jury at the first or spring term of their respective counties recommend such tax." By § 483 it was declared: "If from any cause such grand jury is not empaneled, or they adjourn without taking any action thereon, or they refuse to make such recommendation sufficient to discharge any judgment that may have been obtained against the county, or any debt for the payment whereof there is a mandamus, or the necessary current expenses of the year, such justices may levy the necessary tax without such recommendation." By § 485 provision was made for

a creditor to compel a tax to be levied or for a taxpayer to resist it. Section 486 stated the purposes for which county taxes should be assessed: One of them was: "To pay the legal indebtedness of the county, due or to become due during the year, or past due." After this followed the section upon which the present controversy mainly rests. It reads as follows: "When debts have accumulated against the county so that one hundred per cent. on the State tax, or the amount specially allowed by local law, can not pay the current expenses of the county and the debt in one year, they shall be paid off as rapidly as possible, at least twenty-five per cent. every year."

It will be seen at a glance that these sections are far from clear, and are difficult if not impossible to reconcile with each other in all respects. The authority to levy a tax of fifty per cent., upon recommendation of the grand jury, over and above the special tax already authorized, is followed by a provision in case they fail or refuse to make the recommendation, which mentions the payment of any debts in judgment or for which there is a mandamus, as well as current expenses of the year. This apparently contemplates primarily a recommendation of the grand jury to levy a tax to pay such debts, and the action of the justices of the inferior court only in the event they fail to make recommendation. Here, also, only a particular class of debts is mentioned. On the face of it, the second section above quoted contains no express limitation as to amount. But this court held that the two should be construed together, and that the authority of the justices, or their successors, the ordinary or county commissioners, to levy without recommendation was not more extensive than the power to levy with a recommendation. *Waller* v. *Perkins,* 52 *Ga.* 234. The next section, in stating the purposes for which county taxes may be levied, refers to the "legal indebtedness of the county," and does not confine it to a debt which may have been reduced to judgment or in regard to which a mandamus may have been obtained. Then follows the provision already quoted, which no longer adheres to the fifty per cent. limitation, but provides that if debts have accumulated against the county so that "one hundred per cent. of the State tax" can not pay the current expenses and the debts in one year, they shall be paid off as rapidly as possible, at least twenty-five per cent. each year.

The inferior court having been abolished, in later codes the ordinary or county commissioners took their place in regard to county taxation. These provisions were contained in the Code of 1868 and in those of 1873 and 1882 in the same order in which they occurred in the Code of 1863. In 1881 the legislature passed an act providing for cases where the spring term of the court might adjourn before the grand jury had made their general presentments. In the Code of 1882 this act was incorporated as a part of the section already existing for cases where a grand jury was not empaneled or failed to act. Thus at the close of that section appears the proviso: "such tax shall not exceed the levy last recommended by a grand jury for such county." In this form it was incorporated into the Code of 1895, and again in that of 1910, and each time was adopted by the legislature. As, however, the limitation upon the power of a previous grand jury was the same as that upon the grand jury for that term, this did not materially affect such limitation, as already construed by this court.

In *Arnett* v. *Griffin,* 60 *Ga.* 349, a county tax of 199 1/3 per cent. upon the State tax was levied and resisted. This court upheld the levy. In doing so it determined what items could be levied without recommendation of the grand jury, and that their aggregate was more than ninety-nine and one third per cent., thus leaving approximately one hundred per cent. over and above such special items. Referring to the decision in 52 *Ga.,* supra, Jackson, Judge, said that it was there held that the ordinary could levy a tax for county buildings without recommendation of the grand jury; that besides this he could levy to pay judgments, etc., not exceeding fifty per cent.; and that as to accumulated debts, where fifty per cent. would not pay them, the grand jury may go to the extent of one hundred per cent. to pay them, and in such cases creditors have the right to twenty-five per cent. of this sum if there be not enough to pay the current expenses and the debt. It was accordingly held, that, the grand jury having recommended one hundred per cent., and the special items which could be levied without recommendation covering ninety-nine and one third per cent., the whole levy was legal. This recognized the fact that a levy to pay indebtedness fell within the purview of the grand jury to recommend, subject to the right and duty to make the levy if they failed or refused to act. The same rule is recognized in

the case of *Sullivan* v. *Yow,* 125 *Ga.* 326 (54 S. E. 173). In that case, fifty per cent. was mentioned as the limit, but no accumulated debts were there involved, so that the one hundred per cent. limit would apply.

The codifiers of the Code of 1895 took the section with reference to accumulated debts from the position which it had occupied since the adoption of the Code of 1863, and placed it along with sections touching special and extra taxes, in advance of the section authorizing the ordinaries to raise a tax for county purposes, "over and above the tax they are hereinbefore empowered to levy, not exceeding fifty per cent. upon the amount of the State tax for the year it is levied," upon recommendation of the grand jury; and in that position it was adopted in the Code of 1895 and that of 1910. Perhaps the reason for the transposition arose from the radical change made by the constitution of 1877 in regard to the incurring of indebtedness by counties and municipalities. Prior to that time debts had been incurred with great freedom, and sometimes unwisely and disastrously. The constitutional convention determined to put a check upon extravagance or the incurring of indebtedness by such political bodies. They therefore provided that no county or municipal corporation should incur any new debt except for a temporary loan to supply casual deficiencies of revenue, not to exceed one fifth of one per cent. of the assessed value of the property therein, without the assent of two thirds of the qualified voters thereof at an election for that purpose. It was also declared that at or before incurring any bonded indebtedness the county or municipality should provide for the assessment and collection of an annual tax, sufficient in amount to pay the principal and interest of said debt within thirty years from the date of the incurring of said indebtedness. Civil Code (1910), § 6564. As the constitution thus required a permanent provision for the collection of a tax to pay bonded indebtedness, as to such indebtedness it superseded and rendered unnecessary any recommendation of a grand jury in regard to it. As to indebtedness other than bonded indebtedness, this was also prohibited, except upon an election, and excepting a loan to meet casual deficiencies. It being thus provided that debts could not be incurred merely at the will of the ordinary or commissioners, but required the sanction of a popular vote, it is probable that the codifiers therefore thought that a complete

change had been made in the status of debts which could be legally incurred by the county, and that they thereafter occupied a fixed position. By § 440 et seq. of the Code of 1910 provision is made in regard to election for the purpose of incurring bonded indebtedness. In the notice to be given it must be specified what amount of bonds are to be issued, for what purpose, what interest they are to bear, and how much principal and interest is to be paid annually, and when the bonds are to be paid off. By the act of 1904 (Civil Code 1910, § 463 et seq.) a similar provision is made in regard to incurring indebtedness other than bonded indebtedness; and in this it is also declared that the notice shall specify the amount of the debt to be incurred, for what purpose, what amount of the debt is to be paid annually or at stated periods, and the terms of the contract under which the debt is to be incurred.

Thus by the constitution counties are prohibited from incurring any indebtedness except in the manner therein pointed out, and they are required to make provision in advance in regard to the payment by taxation of bonded indebtedness. And by the acts of the legislature similar provision as to specifying the times of payment of debts other than bonded indebtedness is required. This works so radical a change in the old system of creating debts, that it would be useless to say that the county was bound to provide in advance how and when the debt should be paid and the people should ratify that declaration, and yet the payment should depend upon a recommendation of a grand jury. And, as said in the case of *Sullivan* v. *Yow,* supra, there were no accumulated debts, and what was said in that case had no application to the section of the code now under consideration. We are of the opinion, therefore, that under the present status of the law, if there is a legal indebtedness of a county incurred in a manner authorized by law, it is contemplated that it shall be paid in the manner previously fixed, and that the tax levy of the difference between the current expenses and one hundred per cent. upon the State tax can be made without recommendation of the grand jury. This is reinforced by the requirement that at least twenty-five per cent. shall be paid in each year, and the fact that the creditor may bring mandamus to compel the levy of the tax and any taxpayer may contest the proceeding. With a legal indebtedness and the terms of payment fixed upon a county in a manner prescribed by the

constitution, with the right in the creditor to proceed by mandamus to compel the levy of a tax for the purpose of its payment, with a provision for the levy of the difference between the amount of the current expenses and the amount of the State tax, and a requirement for the payment of at least twenty-five per cent. per annum, the recommendation of the grand jury could neither prevent nor assist in the carrying out of the law in this regard, and it would be more ornamental than substantial. If the indebtedness is a contractual one and is legal under the constitution and law, it requires no recommendation of the grand jury to levy a tax for the difference between current expenses and one hundred per cent. on the State tax to pay it. We are dealing here with the question of contractual debts, and not with liabilities arising from the breach of a contract, or the like. No question of such liability is raised in this case, or as to taxation to pay it, and it is unnecessary now to discuss their status. If a debt is legal and legally incurred, and is not paid at the time when it falls due, it remains a legal debt and ranks as an accumulated debt.

It is evident that the presiding judge placed a different construction upon § 507 of the Civil Code from that above indicated as the proper one. It is clear that the amount necessary to pay the bonded indebtedness falling due (alleged to be $3,250) is a proper item of the tax levy. As to other matters which are claimed to be debts of the county and which are not covered by specific items of the tax levy, such as for the support of paupers, maintenance of public buildings, etc., it does not appear with sufficient clearness whether they are in fact legal debts of the county, so that this court may give direction in regard to them. We deem it best to reverse the judgment and remand the case to the court below, with direction that he rehear it and determine what part of the tax which it is proposed to levy and collect under item 1 of the tax levy may properly be enforced and what can not.

*Judgment reversed, with direction. All the Justices concur.*