SOUTHERN RAILWAY COMPANY *v.* FULTON COUNTY.

No. 7276. FEBRUARY 28, 1930.

252

*McDaniel, Neely & Marshall,* for plaintiff in error.

*Frank Carter* and *Dorsey & Shelton,* contra.

PER CURIAM.   1.   From the agreed statement of facts and other evidence it appears that in September, 1926, when the tax levy in the instant case was made, there were outstanding warrants issued by Fulton County in the hands of certain Atlanta banks, aggregating approximately $1,500,000.   The record is silent as to

what other debts or liabilities, if any, Fulton County had outstanding at that time. The levy of 20 cents to pay debts would yield approximately one half million dollars, or about one third of the amount of the warrants outstanding in the hands of the banks. Certain warrants were set out as typical of others, showing the method by which the banks acquired the warrants. The County of Fulton issued warrants or orders on the county treasurer for certain claims, and the banks purchased these warrants from the payees thereof, who transferred to the banks the warrants and the claims upon which they were issued. By previous arrangement between Fulton County and the banks, the county by discounting the warrants paid the bank interest amounting to 6 per cent. on the warrants purchased, instead of 7 per cent., the lawful rate fixed by statute, this reduction being made on account of the interest being paid in advance from the date of the warrants until December 19, 1926. The method of handling the warrants was testified to, in part, by Robert Strickland Jr., vice-president of the Fourth National Bank, who was offered as a witness by the railway company, and by other witnesses, as follows: "It was agreed that we would purchase the county's warrants at a discount of six per cent., . . that we would examine each warrant purchased, and if it were not issued for a legal purpose and was not therefore a legal obligation of the county, it would not be accepted. . . As to the purpose of handling warrants in that way, and whether or not it was to make legal the discounting of the warrants, some question had arisen as to the county in the financing of its affairs. As to the result of that question, a conference of counsel for the several banks was held, and the several banks were advised that this method was legal to protect themselves in purchasing county warrants. . . The bank received the warrants it discounted from the payees of the warrants. The bank did not pay any money to the county for warrants. The warrants were purchased from the payees named in the warrants. The money was given to the payees. Our bank did not make any contract with the county, written or otherwise, obligating us to purchase warrants from anybody. Our bank in purchasing the warrants decided to examine each warrant, and to purchase from the payees only such warrants as were issued for a legal purpose. They were examined by us, and, in our judgment, we bought no warrants that did not seem to be for legal expendi-

tures. . . We use the word 'loan' as a generic term to cover disbursements, discounts, as well as purchase of paper and choses in action. It is a general custom among banks to use the word 'loan' in this generic sense. If, for example, you came to me and told me you had a note which you had given for some real estate and the man to whom you had given it would like to get his money on it, and you asked me if I would buy it from him, and I said yes, I would describe that as a loan. That would be generally included in the general description of loans as I understand the use of the word, using the word 'loan' or 'borrow' as a generic term to describe any kind of bank transaction in which the bank advances money in connection with the purchase of any paper or making an investment of the bank's money. . . It was specifically understood, under the arrangement which was made between our bank for the discount of these warrants, that we had the right to reject any warrant at any time that we wanted to; and we could have at any time withdrawn from the arrangement, if we wanted to do so, by rejecting any warrant presented. The banks were willing to enter into the arrangement for purchasing certain county warrants outstanding, because they considered them legal and collectible obligations and a good investment."

Ronald Ransom, vice-president of the Fulton National Bank, testified: "The Fulton National Bank would not have taken any of these warrants without the transfer of the claim and the indorsement on the back of it, and they very carefully inspected each warrant that came in, to be sure that the purchaser of the warrant and the payee were both satisfied and it was a proper indorsement and transfer." Walter B. Stewart, one of the county commissioners, testified: "There was no contract that I know about, between the county and the banks, that obligated the banks to lend the county any money during that time. There was no contract at all, verbal or written, that obligated the banks to purchase any warrants that they did not want to purchase." Another county commissioner, Paul S. Etheridge, testified: "We discussed with the banks on several occasions a plan for their discounting the warrants that we were to issue to people to whom the county owed money. . . The county during 1926 did not execute to the banks any notes for borrowed money. The county made no contracts with the banks that would obligate the banks

to purchase any warrants that they did not want to purchase. . . We arranged with the banks to handle these warrants for us as a matter of accommodation to us and to the payees holding the warrants. One reason was that we did not want them scattered about, hawked about, or anything of that sort. We felt that we were in good financial condition. The understanding was that these banks would take these warrants, such of them as they wanted. They had the right to throw out those they did not want or did not see fit to take. It was the purpose of the county in making this arrangement to save the interest rate and protect the credit of the county. We discussed that, and in discussing it with the banks that they would take them at six per cent., whereas those warrants were an obligation of the county, and the county would be required to pay seven per cent. interest to whomever held them."

It is insisted that the tax levy of 3.65 cents by Fulton County for current expenses is excessive, for the reason that it exceeds fifty per cent. of the State tax; and it is argued that the 17 cents levied to pay "other lawful charges" comes under the head of "current expenses;" but there is nothing in the agreed statement of facts or the evidence to sustain that contention. In *S. A. L. Ry. Co.* v. *Wright,* 157 *Ga.* 722 (2) (122 S. E. 35), this court held: "And item 9 of section 513, that is, to pay 'any other lawful charge against the county,' may or may not fall under the head of 'current expenses,' accordingly as the county purpose for which the tax there specified and levied is a regular, ordinary expense or not." In *Blalock* v. *Adams,* 154 *Ga.* 326 (2, 3) (114 S. E. 345), this court held: "The proper county authorities can legally levy a tax, not exceeding 100 per cent. of the State tax, to pay accumulated debts and current expenses; and an item of a tax levy for such purpose should not be considered in determining whether the county authorities have exceeded their power to levy taxes for county purposes under the Civil Code (1910), § 508. . . All presumptions are in favor of the legality and validity of a tax." All items classified in the tax levy as "current expenses," and attacked by the affidavit of illegality, aggregate only 36.5 cents, or less than 100 per cent. of the State tax. It was not proved that the part of the levy for "other lawful charges" falls under the head of "current expenses," and therefore that item, under the decision in *S. A. L. Ry. Co.* v. *Wright,* supra, must be eliminated from consideration,

leaving only 19.5 cents, or less than fifty per cent. of the State tax, as the aggregate of all other items classified by the railway company as current expenses.

In *Central of Ga. Ry. Co.* v. *Wright*, 165 *Ga.* 1 (2) (139 S. E. 890), it was held:. "Unpaid lawful current expenses incurred in one year, which were not discharged by payment and for which county warrants were legally issued, are accumulated debts of the county falling within the provisions of paragraph 1, section 513 of the Code." It appears from the record that the County of Fulton levied an item of 20 cents on the $100 to pay "indebtedness," etc. It was estimated that this item would yield $567,134.51. At the time the levy in question was made in September, 1926, there were outstanding warrants which had been discounted by the banks, aggregating approximately one and a half million dollars. The affidavit of illegality alleges that the levy to pay debts was void for the reason that the county owed no debts, and further that during the year 1926, prior to the levy, the county had issued certain notes illegally and had borrowed money from certain banks illegally; and that, the alleged loans being illegal and void, the levy to pay these notes was likewise void. By an inspection of the testimony of witnesses offered by the railway company it appears that there is nothing to prove this allegation of the affidavit; but on the contrary the trial judge was authorized to find from the evidence that no contract of any kind was made between the county and the banks for the borrowing of money by the county. By the agreed statement of facts and the evidence it is disclosed that during the year 1926 valid claims against the county were presented for payment, and the county did not in every instance have sufficient funds with which to pay these claims; and for the purpose of providing for their payment when due, an arrangement was made between the commissioners of roads and revenues of the county and certain banks, by which the county would issue to the person holding a valid claim a warrant for the amount due, and the payee of the warrant could transfer it, if he so desired, to the bank and guarantee the payment of the same, and authorize the bank, if it so desired, to waive payment of the warrant until December 19, 1926. There was nothing obligatory upon the payee of the warrant to sell it to the bank, and the bank was not obligated to purchase a warrant unless it saw fit to do so. The holder of such warrant in

selling it to the bank would make an indorsement on it as follows: "For value received, the within warrant, together with the claim for which it was issued, is hereby indorsed, transferred, and assigned to —————. The undersigned guarantees payment of this warrant, and authorizes the holder to present the same to the county treasurer and to waive all rights to prior payment until December 19, 1926." Under Ga. L. 1924, pp. 87, 89, 256, in Fulton County, the solicitor-general, the solicitor of the criminal court, the clerk of the superior court, the sheriff, the ordinary, the tax-receiver, the tax-collector, together with their assistants, deputies, and clerks, are all paid salaries from the county treasury; and these salaries are required to be paid on the first day of each month. These claims are therefore, among others, valid claims against the county; and when the county issues its warrant or order on the county treasury for the same, the claimant has a negotiable instrument which under the law can be negotiated by indorsement, and when so indorsed the indorser becomes liable according to the terms of his indorsement; and when the warrant is presented to the county treasurer for payment, and payment is refused, the warrant begins to draw interest at 7 per cent. per annum until paid, provided the holder complies with the law by presenting it annually. Under the Civil Code (1910), § 584, county orders or warrants may be sold, and the county treasurer himself is permitted to purchase a warrant, provided he pays full value therefor; and under § 583 all county orders are negotiable by delivery or indorsement, and the indorser is liable according to the terms of his indorsement as in commercial paper. Inasmuch as the law authorizes a sale of county warrants and provides the method by which the vendor shall be liable to the vendee, and how the county shall be liable for interest, we hold that there is nothing illegal in the arrangement which was made between the county and the banks in discounting the legal warrants issued by the county. See *Pitts Banking Co.* v. *Sherman,* 166 *Ga.* 495 (143 S. E. 581).

It is contended that the levy of a tax to pay a debt is in violation of art. 7, sec. 7, par. 1, of the constitution, prohibiting the creation of a debt. Under the facts of this case that contention is without merit. See *Blalock* v. *Adams,* supra; *Commissioners of Habersham County* v. *Porter Mfg. Co.,* 103 *Ga.* 613 (30 S. E. 547); *So. Ry. Co.* v. *Wright,* 154 *Ga.* 334 (114 S. E. 359). As said in

*Central of Ga. Ry. Co.* v. *Wright,* supra, "There is a marked difference between borrowing money to meet a present or anticipated current expense, and discharging by a tax levy liabilities for a necessary past current expense, no matter how the liability arose." "If a debt is legal and legally incurred and is not paid at the time when it falls due, it remains a legal debt." *Sheffield* v. *Chancy,* 138 *Ga.* 677, 686 (75 S. E. 1112). "The burden is upon the petitioner to make clear and manifest the illegality of the tax, some portions of which are not subject to the limitation." *Clements* v. *Powell,* 155 *Ga.* 278, 280 (11) (116 S. E. 624).

From what has been said above, and from the authorities cited, we reach the conclusion that the transactions involved in the present case constituted a purchase of valid negotiable instruments, and that these instruments in the hands of the banks were binding obligations against the county, for the payment of which the county had a right to levy the tax in the instant case. The court did not err in finding against the grounds of the affidavit of illegality, and in ordering the levy to proceed.

*Judgment affirmed. All the Justices concur, except Russell, C. J., absent for providential cause.*

GILBERT, J., concurs in the judgment of affirmance, adhering to the views expressed in *Central of Georgia Ry. Co.* v. *Wright,* 165 *Ga.* at p. 33.