ATLANTA DISTRIBUTING TERMINALS INC. *v.* BOARD OF COMMISSIONERS OF FULTON COUNTY *et al.*

No. 9614.   June 17, 1933.

254

256

*C. N. Davie, J. F. Kemp,* and *J. D. Tindall,* for plaintiff.

*Charles B. Shelton, Ralph H. Pharr, Pope F. Brock,* and *Spalding, MacDougald & Sibley,* for defendants.

HAWKINS, J. ■ The questions which are presented by the record for decision by this court may be briefly stated as follows:

(a) Is the constitutional amendment of 1927 merely an addition to the "casual-deficiency" provision of article 7, section 7,

paragraph 1, of the constitution of this State (Civil Code, § 6563), which provides that "no county . . shall incur any new debt, except for a temporary loan or loans to supply casual deficiencies of revenue, not exceeding one fifth of one per centum of the assessed value of the taxable property therein," without the assent of the voters of such county as therein provided, and merely increasing the amount which a county may borrow to supply casual deficiencies of revenue from one fifth of one per centum of the assessed value of the taxable property therein to fifty per centum of the total gross income of the county from taxes and other sources in the preceding year; or does this amendment confer upon the counties therein named a right to borrow money in an amount not exceeding the limitation therein fixed, for purposes other than to supply casual deficiences of revenue?

(b)   If the right to borrow money for purposes other than to supply casual deficiencies of revenue is conferred upon the commissioners by this constitutional amendment, can they lawfully apply any part of the moneys so borrowed to the payment of past-due indebtednesses of the county represented by outstanding and unpaid warrants issued prior to the year in which the loan is obtained; or are the commissioners limited in the use of the funds so obtained to payment of the current expenses of the county during the year in which the loan is obtained?

(c)   If entitled to obtain the loan, have the commissioners abused the discretion vested in them by contracting for the entire amount of the loan at this time?

We think that the answer to the question first above stated is to be found in the constitutional amendment itself, which provides:

"Section 1.   Be it enacted by the General Assembly of the State of Georgia, and it is hereby enacted by authority of the same, that article seven, section seven, paragraph one, of the Constitution of Georgia, which has heretofore been amended, shall be further amended by adding at the end thereof a new subparagraph in the following words, to wit:   And except that Fulton County, and/or Chatham County, and/or Richmond County may, *in addition to the debts hereinbefore allowed* [italics ours], make temporary loans between March 1st and December 1st in each year, to be paid out of the taxes received by the county in that year, said loans to be evidenced by promissory notes signed by the chairman and clerk of

the board having charge of the levying of taxes in said county and previously authorized by resolution by a majority vote at a regular monthly meeting of such board entered on the minutes. The aggregate amount of said loans outstanding at any one time shall not exceed fifty per cent. of the total gross income of the county from taxes and other sources in the preceding year, and no new loans shall be made in one year until all loans made in the previous year have been paid in full." Ga. L. 1927, p. 123.

By the express terms of this amendment it is provided that the County of Fulton "may, in addition to the debts hereinbefore allowed," make temporary loans as therein provided for, and not exceeding the amount therein specified. No reference whatever is made to the casual deficiency clause of the article of the constitution which is thus amended, but on the contrary it is expressly provided that the loans thus authorized are in addition to the other debts therein referred to. The only debts provided for in this article of the constitution before it was thus amended were (1) for temporary loans to supply casual deficiencies of revenue, and (2) an indebtedness incurred after an election. There is nothing in this amendment which would indicate that the temporary loans allowed thereby have anything to do with casual deficiencies of revenue. The power is expressly given in addition to the casual-deficiency powers. It is not provided that the exercise of the borrowing power is conditioned upon there being a casual deficiency of revenue, but it is an absolute grant of power. Nor would it be logical or reasonable for this court to place such a limitation by construction upon the power to borrow conferred by this amendment. A casual deficiency has been defined by this court as follows: "The word 'casual' means that which happens by accident or is brought about by an unknown cause; and we think the framers of the constitution, in using this language, meant some unforeseen or unexpected deficiency, or an insufficiency of funds to meet some unforeseen and necessary expense." *Lewis* v. *Lofley,* 92 *Ga.* 804 (19 S. E. 57) ; *Hall* v. *County of Greene,* 119 *Ga.* 253, 254 (46 S. E. 69), and cit. It would be difficult to imagine how a casual deficiency, as thus defined, could arise which would necessitate loans in a given year to the aggregate of fifty per cent. of the previous year's revenue of a county such as Fulton, and to say that the constitutional amendment of 1927 authorizes Fulton County to borrow to meet

casual deficiencies only is to reduce it to an absurdity. We think the conclusion is irresistible that this constitutional amendment gave to the counties therein named the power to borrow money in an amount not exceeding the limit therein fixed, for any purpose for which the county may lawfully expend its funds, particularly when the amendment is viewed in the light of the history surrounding its enactment. There certainly has existed no practical need for increasing the borrowing capacity merely to meet casual deficiencies, but the stressing need for counties such as those referred to in the amendment has been for authority to borrow money to meet ordinary current expenses before the collection of taxes in the fall. And we think this conclusion is strengthened when we consider the other amendments to this article and paragraph of the constitution, increasing the amount of indebtedness which various other political subdivisions of the State are permitted to incur for the various and sundry purposes therein specified, which amendments are now codified as a part of the Civil Code, § 6563.

█ Having held that there is no limitation on the purposes of the loan, but that the county may borrow money and use the same for any lawful county purpose, can the commissioners apply a substantial portion of the funds thus borrowed to the payment of past-due indebtednesses of the county, represented by outstanding and unpaid warrants issued prior to the year in which the loan is obtained? It is not contended by the plaintiff that the outstanding warrants of the county were not given to cover legal obligations of the county. So far as the record discloses, they were given to cover either material or services of value to the county, and to be paid out of available funds in the hands of the treasurer, or out of the proceeds of taxes which had been or might have been lawfully levied during the year or years in which they were issued. These warrants must, then, be held to represent legal indebtednesses of the county. In *Central of Georgia Ry. Co.* v. *Wright,* 165 *Ga.* 623 (142 S. E. 288), this court held: "There is no constitutional limitation on the power of a county to levy taxes for the payment of its debts, or for the payment of obligations assumed in obtaining property or services of value which were essentially necessary in the proper administration of the county government." In *Central of Georgia Ry. Co.* v. *Wright,* 165 *Ga.* 1, 21 (139 S. E. 890), it was said: "Learned counsel for the plaintiff in error insists that there

can be no legal indebtedness under the terms of subsection 1 of section 513 of the Code, except such debts as may be created to supply a casual deficiency in revenue, and such as have been sanctioned by a vote of the people. . . We can not agree that the term 'legal indebtedness' of a county is confined in its meaning to such narrow limits. The term 'legal indebtedness' in § 513, properly construed, includes other legal liabilities than current expense and bonded debt. A legal indebtedness on the part of a county arises whenever a county by contract receives either material or services of value, to be paid for out of available funds in the hands of the treasurer or out of the proceeds of taxes that have been or may be lawfully levied during the year in which such contracts are made. Where a county has not paid such a demand and there is no available fund in the treasury with which to pay it, the county authorities may during a subsequent year levy a tax for the discharge of such liabilities." This court has held in a number of cases that a county may levy taxes to pay legal indebtedness of the county due, or to become due, or past due. *Maddox* v. *Anchor Duck Mills,* 167 *Ga.* 695 (146 S. E. 551) ; *Jackson Banking Co.* v. *Gaston,* 149 *Ga.* 31 (99 S. E. 30) ; *Wright* v. *Southern Ry. Co.,* 146 *Ga.* 581 (91 S. E. 681) ; *Southern Ry. Co.* v. *Fulton County,* 170 *Ga.* 248, 257 (152 S. E. 567).

It appears from the record in this case that Fulton County had outstanding and due it in unpaid taxes, on January 1, 1933, the sum of $1,254,357.19. It could not be successfully contended that these taxes, when collected, could not be used for the payment of the outstanding and unpaid warrants of the county. The constitutional amendment now under consideration provides that any temporary loans made under the authority of the same are "to be paid out of the taxes received by the county in that year." It follows, therefore, that any unpaid taxes for previous years which are collected during 1933 may be applied to the payment of this loan. Since there is no express provision setting out the purposes for which such temporary loans can be made, it is proper, in determining the purposes, to look to the source from which these loans are to be repaid. Since these taxes for previous years can be used for that purpose, and could likewise be used for the purpose of paying the outstanding warrants issued during the year 1932, and since taxes may be lawfully levied for the payment of such warrants, we hold

that the proceeds of a loan made in 1933 under the temporary-loan provision of the constitution as amended may be applied to the payment of the warrants of Fulton County issued during the year 1932, and in previous years, where such warrants represent "legal indebtedness" of the county as hereinbefore defined. Had it been the intention of the framers of this constitutional amendment to limit the use of the funds obtained by the temporary loans permitted thereby to payment of the current expenses of the county during the year in which the loan was made, it would seem to us that some expression of this intention would have been included therein. Not having been so limited, this court can not supply such limitation by construction or implication.

■ Nor can we hold that the commissioners have abused the discretion vested in them under the law. In *Commissioners of Habersham County* v. *Porter Mfg. Co.,* 103 *Ga.* 615, 617 (30 S. E. 547), it was held: "The discretion vested in the county authorities must be from the nature of the case a broad one, and therefore the reviewing power of the judge of the superior court must be exercised with caution, and no interference had unless it is clear and manifest that the county authorities are abusing the discretion vested in them by law." See also *Chipstead* v. *Oliver,* 137 *Ga.* 483 (2) (73 S. E. 576); *Anderson* v. *Newton,* 123 *Ga.* 512 (3) (51 S. E. 508); *Dunn* v. *Beck,* 144 *Ga.* 148 (86 S. E. 385); *Trapnell* v. *Candler County,* 146 *Ga.* 617 (91 S. E. 771). It appears from the record in this case that the net cost to the county for the loan which is proposed, including interest and commissions, will be four per cent. The outstanding warrants of the county bear interest at the rate of seven per cent. per annum. By applying a portion of the funds received from the loan to the payment of these outstanding warrants, the taxpayers of the county will receive the benefit of the reduction of three per cent. in interest. It is further alleged by the defendants that the expense of making several loans would be substantially greater; and that even if it were possible to obtain lenders willing to lend to the county at short intervals, the interest rate would be considerably greater; and these allegations are not controverted. Under all of the facts of the case, and under the authorities cited, we can not say that the court erred in finding that the commissioners have not abused their discretion.

*Judgment affirmed. All the Justices concur.*