MADRONAH SALES COMPANY *v.* WILBURN *et al.*

ATKINSON, Justice. While the territory of the State, in virtue of the act of 1911 (Ga. L. 1911, p. 146), was divided into twelve Congressional Districts numbered 1 to 12 inclusive, a bill was finally passed by the General Assembly, on August 21, 1931 (Senate Journal 1931, pp. 1199-1204), and approved by the Governor as his serial number 152 on August 25, 1931, proposing an amendment to paragraph 1 of section 8 of article 7 of the Constitution of Georgia. Section 2 of the act contained the clause: "The Governor shall, and he is hereby authorized and directed to, cause the above-proposed amendment to be published in one or more newspapers in each Congressional District in this State for the period of two months next preceding the time of the holding of the next general election." The publication was duly made in each of the twelve Congressional Districts. The question of adoption was voted upon at the next general election, and was carried. The Governor duly proclaimed the amendment adopted as part of the constitution. On the day following final passage of the bill above mentioned, the General Assembly passed another bill known as the "Congressional Reapportionment Bill," in which the State was divided into ten Congressional Dis-

tricts numbered 1 to 10, inclusive (Senate Journal 1931, p. 1246). The bill was approved by the Governor as his serial number 157 (Ga. L. 1931, p. 46) on the same day that he approved the above bill to amend the constitution. It transpired that the bill to amend the constitution was not advertised in a newspaper published in the new tenth Congressional District. *Held:*

1. Giving the act to amend the constitution a liberal construction (*Hammond* v. *Clark*, 136 *Ga.* 313, 71 S. E. 479, 38 L. R. A. (N. S.) 77), it contemplated publication in newspapers published in each of the twelve Congressional Districts as defined by the act of 1911, supra, which was the only law defining Congressional Districts at the time the members of the General Assembly were voting to amend the constitution.

(*a*) The publication was in compliance with the act of 1911, and sufficient to meet the requirements of paragraph 1 of section 1 of article 13 of the constitution (Code of 1933, § 2-8601), providing for publication of acts of the General Assembly proposing to amend the constitution.

(*b*) The Congressional District reapportionment act expressly repealed the congressional reapportionment act of 1911, and contained a general clause, "that all laws, and parts of laws, in conflict herewith be and the same are hereby repealed," but it did not purport to expressly repeal the act proposing the amendment to the constitution, nor were its provisions such as to repeal that act by implication.

(*c*) The omission of publication in the new tenth Congressional District did not furnish ground to invalidate the election or cause the amendment to the constitution to fail.

2. The act approved August 25, 1931, proposing an amendment to the constitution, is not unconstitutional and void on the ground, as contended, that the proposed amendment is violative of paragraph 1 of section 1 of article 13 of the constitution (Code of 1933, § 2-8601), for the reason that the. notice of submission thereof to the voters was not published in one or more newspapers in each Congressional District for 2 months previous to the holding of the next general election.

3. The caption of the act is as follows: "An act to submit to the qualified voters of Georgia an amendment to paragraph one, section eight of article seven of the constitution of Georgia, by providing for the assumption by the State of Georgia of the indebtedness due the several counties of the State and the Coastal Highway District, heretofore incurred for the construction and . . paving of the public roads or highways of the State which have become a part of the State-aid roads of the highway system of Georgia; to define said indebtedness; to provide for the method of payment of the said indebtedness; to authorize the General Assembly to enact laws to render effectual the foregoing provisions; and for other purposes." The act is not violative of paragraph 8 of section 7 of article 3 of the constitution (Code of 1933, § 2-1808), on the ground that the caption thereof refers to more than one subject-matter.

4. In section 1 of the act is a statement of the proposed amendment to the constitution. This statement is followed by a separate paragraph called "paragraph 1," which purports to give the language of the portion of the constitution in question as it will appear after amendment. The act is not void, as contended, on the ground that it is "vague, uncertain, am-

biguous, and contradictory," or on the ground that section 1 of the act proposes to amend the constitution "so that the State might assume all indebtedness contracted by and through the State Highway Department for and on behalf of the State of Georgia and due to the several counties of this State as well as to the Coastal Highway District and the counties of said district incurred for certain named purposes," whereas it is provided in paragraph 1 of section 1 of the said act that when the constitution is so amended it will provide "for the assumption of all indebtedness of the several counties of this State as well as that of the Coastal Highway District and the assessments made against the counties of said district incurred for said purpose."

5. Being an act to amend the constitution so as to make the proposed amendment a part of the organic law, the said act is not unconstitutional, as contended, because (a) it is violative of paragraph 1 of section 12 of article 7 of the constitution (Code of 1933, § 2-6001), limiting the power to increase the bonded debt of the State; or (b) because it is violative of paragraph 2 of section 1 of article 7 of the constitution (§ 2-4902) limiting the amount of taxes·leviable on property by the General Assembly for any one year.

6. After final ratification and proclamation of the amendment to the constitution as referred to in the preceding notes, an act of the legislature was approved on March 1, 1933 (Ga. L. 1933, pp. 161-172), the caption of which was as follows: "An act to enable the State Highway Department of Georgia to effectually carry out and put into effect the provisions of the amendment to the constitution of the State of Georgia, proposed by the General Assembly of Georgia by an act approved August 25, 1931 (Georgia Laws 1931, pp. 97-101), and ratified in the manner prescribed in said act at the general election held in the State of Georgia on November 8, 1932; to declare and define the amount of indebtedness of the several counties of this State, and the Coastal Highway District, liable for payment under the provisions of said amendment; to provide for annual installments and the maturities thereof for the payment of said indebtedness; to provide a method for issuing certificates of indebtedness and form therefor; to prescribe the manner of execution and delivery of such certificates; to provide for the transfer or negotiation of such certificates; to declare such certificates as instruments of government and non-taxable; to provide a method of registration for such certificates; to provide a penalty for forging or counterfeiting the same; to provide for the disposition of funds realized or received from said certificates of indebtedness; to provide for the adjudication of differences between any of the several counties hereinafter named, and . . the Coastal Highway District, on the one hand, and the State Highway Department on the other; to provide for establishment of any original lost or destroyed certificates of indebtedness heretofore issued by the State Highway Department to any county or district; and for other purposes." This act and highway refunding certificates duly issued in pursuance thereof by the Highway Department are not unconstitutional and void, as contended, on the ground that the act is violative of the various provisions of the constitution as dealt with in the preceding divisions, or because the provisions as found in sections 2, 3, 4, 5, 7, 8, 11,

12, and 13 of the act, with reference to issuance and payment of such refunding certificates, are at variance with article 6, paragraph 1, of the act of 1919 (Ga. L. 1919, p. 252).

7. It is urged "that so much of the act of 1933 as purports to declare and to define the amount of the indebtedness of the several counties of this State and the Coastal Highway District of this State liable for payment under the provisions of the constitutional amendment is unconstitutional, void, and of no effect, because the same amounts to an invasion of the judicial function by said legislature, and is in violation of paragraph 23 of section 1 of article 1 of the constitution of the State of Georgia" (Code of 1933, § 2-123), relating to separation of legislative, judicial, and executive powers. This ground of attack upon the act is without merit.

8. The acts of the legislature of 1931 and 1933 and the highway refunding certificates issued thereunder are not void, as contended, because the acts "fail to specify the exact source from which payment of said certificates is to be effected," or because "the provision of said act of 1931 as follows, to wit, 'Said indebtedness as evidenced by said certificates of indebtedness of the Highway Department shall be paid, without interest, solely out of the revenues and . . taxes levied, assessed, and allocated to the State Highway Department of Georgia,' " is too vague and indefinite to constitute lawful authority to pay the certificates out of the revenues and taxes allocated to the State Highway Department of Georgia.

9. Under the pleadings and the agreed statement of facts, the judge did not err in refusing to grant a temporary injunction restraining the members of the State Highway Board from setting apart and segregating from the revenues and taxes levied and allocated to the State Highway Department moneys for payment of refunding certificates issued by the State Highway Department in pursuance of the acts of the General Assembly. ·          *Judgment affirmed. All the Justices concur.*

No. 10738. AUGUST 6, 1935.

*Hewlett & Dennis,* for plaintiff.

*M. J. Yeomans, attorney-general, B. D. Murphy, J. T. Goree, Lee W. Branch, Graham Wright, George L. Goode, Leonard Farkas, J. C. Estes, Gus A. Huddleston, Pope F. Brock, W. W. Dykes, John J. Bouhan,* and *W. M. Dallas,* for defendants.