MAYER *v.* ADAMS *et al.,* commissioners.

No. 11382.   JUNE 11, 1936.

*James A. Branch,* for plaintiff.

*Dorsey, Shelton & Pharr* and *Spalding, Sibley, Troutman & Brock,* for defendants.

GILBERT, Justice.   Charles A. Mayer filed a petition against Charles R. Adams and others, commissioners of roads and revenues of Fulton County, to enjoin them from making a certain loan on behalf of Fulton County.   The petition as amended, and as stated in the brief of the plaintiff and agreed to by the defendants, alleged in substance as follows:   The plaintiff is a citizen and taxpayer of Fulton County, and the defendants are claiming the right and power to borrow money under the provisions of a certain "claimed" constitutional amendment relating to Fulton

County, as proposed by an act of the General Assembly approved August 25, 1927 (Ga. Laws 1927, p. 122), and have tentatively arranged to borrow $2,050,000 for the purpose of using the same in payment of current expenses of the county, including the support of the poor, for the year 1936, and in furtherance of their plan have passed a resolution which has been entered on the minutes of the board, and which in effect recites that they, acting in pursuance of article 7, section 7, paragraph 1, of the constitution of this State, as amended, propose to borrow not exceeding the sum mentioned, on what is termed "tax-anticipation notes" to be dated March 26, 1936, and to mature on September 1, 1936; that the proposed loan is not to be made as a temporary loan to supply casual deficiencies of revenue, and is more than one fifth of one per cent. of the assessed value of the taxable property of Fulton County, and is approximately 50 per cent. of the total gross income of Fulton County from taxes and other sources during the year 1935; that the proposed loan is to be repaid from sources of taxation authorized by law for the purpose of raising revenue for current expenses, including the support of the poor, thus proposing to make use of, and in effect pledge in advance of their collection, all other sources of taxation which, under the constitution and laws of Georgia, they are authorized to levy and collect, save and except only those authorized for current expenses and the support of the poor, and such levy, if any, as may be authorized under the Code, § 92-3701, par. 1, "to pay the legal indebtedness of the county due or to become due during the year, or past due," and such levy as may be authorized under § 92-3706, which provides that under certain conditions the county authorities are authorized "to levy a tax for county purposes over and above other taxes authorized by law, not to exceed 50 per cent. of the amount of the State tax for the year in which it is levied;" that therefore the proposed loan is to be made against, and can be repaid during the current year only out of, the sources which are by law limited to a certain percentage of the State taxes for the year, that is 100 per cent. or 150 per cent. of the State taxes, as the case may be, and such amount as may be levied, not in excess of the State tax for the year, for the support of paupers; that if the proposed loan is authorized and the defendants are allowed to consummate the same, it will not and

can not be repaid during the current year, unless from those sources of taxation above mentioned to the necessary amount as can be raised for its repayment, because, by the means of issuing warrants, the defendants plan and propose to, and will, pledge in advance of their collection all revenue from other sources that may be raised for Fulton County during the current year; that there is no appropriation bill in the State for the year 1936, and the General Assembly has adjourned sine die, and has not been called into extraordinary session, and in the absence of an appropriation bill there is no authority for levying any ad valorem tax for the State, except possibly a levy sufficient to raise a sinking-fund of $100,000 and possibly an amount sufficient to pay the annual salaries fixed by the constitution and the laws of Georgia, and in any event a levy of not more than one mill would be more than ample to raise by ad valorem taxation an amount sufficient for the sinking-fund and such annual salaries, and, furthermore, the revenue raised by the income tax laws of the State is more than sufficient to provide for such items, and therefore there is no authority, in the absence of an appropriation bill, for the levy of an ad valorem tax for the State; that even in the absence of an appropriation bill, if an ad valorem tax not exceeding one mill could be levied for State purposes, the county could not levy and collect in excess of $350,000 under those sources of taxation which are measured by a percentage of the State levy above referred to, and therefore, if the defendants are permitted to consummate the loan of $2,050,000, it will amount to the creation of a debt against the county which can not be repaid during the current year, and the same will not be created as a debt to supply casual deficiencies under the provisions of the constitution; that there is no accumulated indebtedness against Fulton County, and the proposed loan is not to be made for the purpose of paying any accumulated debt of the county.

It is further alleged that the constitutional amendment under which the defendants claim the right to borrow the $2,050,000 was proposed by an act of the General Assembly on August 25, 1927; that the general election in the year 1928 was held on November 6; and that the proposed amendment was published for eight consecutive weeks in one or more newspapers in each of the twelve congressional districts of the State, but that the publication in cer-

tain districts was not in accordance with the requirement of article 13, section 1, paragraph 1, of the constitution of this State, because the first publication was not made two months before the election. It is shown, however, that there was only a slight variation. It is also alleged that in certain districts the last publication was "more than one week" before the election. The votes in favor of the amendment totaled 54,407 for all of the districts, and against the amendment the total was 10,233 votes.

On the hearing the court sustained a general demurrer, and refused to grant an injunction. The petitioner excepted.

■ The constitution of Georgia, art. 7, sec. 7, par. 1 (Code, § 2-5501), provides that no county, municipal corporation, or political division of this State shall incur "any new debt, except for a temporary loan or loans to supply casual deficiencies of revenue, not to exceed one fifth of one per centum of the assessed value of the taxable property therein," without the plebiscite therein described. In 1927 (Ga. Laws 1927, p. 122) the General Assembly submitted to the people a proposed constitutional amendment which, according to the proclamation of the Governor on November 26, 1928, was duly ratified under an election held on November 6, 1928. The amendment as proposed by the General Assembly to art. 7, sec. 7, par. 1, of the constitution was to be made by adding at the end thereof the following words: "And except that Fulton County . . may, in addition to the debts hereinbefore allowed, make temporary loans between March 1st and December 1st in each year, to be paid out of the taxes received by the county in that year, said loans to be evidenced by promissory notes signed by the chairman and clerk of the board having charge of the levying of taxes in said county and previously authorized by resolution by a majority vote at a regular monthly meeting of such board entered on the minutes. The aggregate amount of said loans outstanding at any one time shall not exceed fifty per cent. of the total gross income of the county from taxes and other sources in the preceding year, and no new loans shall be made in one year until all loans made in the previous year have been paid in full." The commissioners of roads and revenues of Fulton County, under that amendment to the constitution, were seeking to borrow the money which the petitioner was attempting to enjoin.

It is contended by the plaintiff that Fulton County is not authorized to make the loan, because under the constitutional amendment, even if legally adopted and ratified, it is conditioned on the ability of the county to repay the loan out of taxes received in the current year, and in support of the contention it is urged that the authority is conditional, that the caption of the act in question contains the words, "to provide that said loans must be paid off out of the taxes received by the county in the year in which said loans are made," evincing, so declares the plaintiff, an intention by the General Assembly to limit the authority of the county to make such temporary loans, and that it is not merely directory. We can not subscribe to that view. The grant of the power to make the loans was absolute and independent of the actual collection of taxes during the current year. Apart from any question of State appropriation act or tax rate, it must be said to have granted to the counties specified in the proposed amendment the absolute right to make temporary loans between March 1st and December 1st in each year, subject to the limitation that the aggregate amount of such loans outstanding at any one time should not exceed 50 per cent. of the total gross income of the borrowing county from taxes and other sources in the preceding year, and that no new loan could be made in any one year until all loans in the previous year should have been paid in full. The argument advanced by the plaintiff, that no loan could be made unless it could be repaid out of taxes levied and collected in the same year, would, if it is to be regarded as sound, render the amendment an empty gesture so far as Fulton County might hope for any benefit from it, as it could not be determined absolutely, at the time of making the loan, that the taxes would be actually received. In *Atlanta Distributing Terminals* v. *Board of Comm'rs,* 177 *Ga.* 250, 260 (170 S. E. 52), it was said, in reference to this amendment: "By the express terms of this amendment it is provided that the County of Fulton 'may, in addition to the debts hereinbefore allowed,' make temporary loans as therein provided for, and not exceeding the amount therein specified. No reference whatever is made to the casual-deficiency clause of the article of the constitution which is thus amended, but on the contrary it is expressly provided that the loans thus authorized are in addition to the other debts therein referred to. The only debts provided for in this article

of the constitution before it was thus amended were (1) for temporary loans to supply casual deficiencies of revenue, and (2) an indebtedness incurred after an election. There is nothing in this amendment which would indicate that the temporary loans allowed thereby have anything to do with casual deficiencies of revenue. The power is expressly given in addition to the casual-deficiency powers. It is not provided that the exercise of the borrowing power is conditioned upon there being a casual deficiency of revenue, but it is an absolute grant of power. Nor would it be logical or reasonable for this court to place such a limitation by construction upon the power to borrow conferred by this amendment." As we view the case, it is not essential that we should decide any other question, such as whether or not under the statutory provisions the money can be borrowed. It is clear that the provision of the constitutional amendment applicable to Fulton County is plenary. It is a new provision by which money may be borrowed under the limitation therein mentioned. Under that provision there is no limitation, however, as is prescribed by statutory law with reference to a State tax levy. It is quite reasonable to conclude that the populous county of Fulton found the statutory law inadequate, and by a vote of the people the county was given the right which did not exist under the constitution before the amendment, and a new limitation was expressly made as to the amount that might be borrowed. Under the admitted facts of the case it appears that the amount proposed to be borrowed is within the constitutional limitation applicable to Fulton County.

■ It is also contended that the constitutional amendment under consideration was not legally ratified, inasmuch as its publication was not in accordance with art. 13, sec. 1, par. 1, of the constitution, because of the failure in several congressional districts to publish the first notice more than two months before the election, and because in others the last publication appeared at a time less than one week before the election. It is alleged and admitted that the proposed amendment was published for eight consecutive weeks in one or more newspapers in each of the twelve congressional districts before the election on November 6, 1928, and that the vote in favor of the amendment was 54,407, and the vote against the amendment was 10,233. The question is not presented as to what might be the result had there been a total failure to

observe the constitutional requirement as to publication. The question raised by the record is whether or not slight irregularities in connection with the publication, under circumstances where there was obviously an attempt in good faith to comply with the constitution, were sufficient to invalidate the result of the election in which the majority vote was so decisively favorable to the amendment. We believe the rule to be that where there is a substantial compliance with the constitutional provision, and the irregularities complained of were not such as could be said to affect the result, the validity of the ratification of the proposed amendment must be upheld. In *Hammond* v. *Clark,* 136 *Ga.* 313, 320 (71 S. E. 479, 38 L. R. A. (N. S.) 77), in quoting from the Constitutional Prohibitory Amendment Cases, 24 Kan. 700, 710, in an opinion by Justice Brewer, who later became a member of the Supreme Court of the United States, it was said: "The two important, vital elements in any constitutional amendment, are, the assent of two thirds of the legislature, and a majority of the popular vote. Beyond these, other provisions are mere machinery and forms. They may not be disregarded, because, by them, certainty as to the essentials is secured. But they are not themselves the essentials. Take a strong illustration: The constitution requires that the 'secretary of State shall cause the same to be published in at least one newspaper in each county of the State where a newspaper is published, for three months preceding,' etc. Suppose a unanimous vote of both houses of the legislature, and a unanimous vote of the people in favor of a constitutional amendment, but that the secretary had omitted to publish in one county in which a newspaper was published, would it not be simply an insult to common sense to hold that thereby the will of the legislature and people had been defeated? Is it within the power of the secretary, either through ignorance or design, to thwart the public decision?' In People *v.* Sours, 31 Colo. 369 et seq. (74 Pac. 167, 102 Am. St. R. 34), the same view was taken. Steele, J., said: 'At the outset it should be stated that every reasonable presumption, both of law and fact, is to be indulged in favor of the validity of an amendment to the constitution when it is attacked after its ratification by the people.' See also Thompson *v.* Winnett, 78 Neb. 379 (110 N. W. 1113, 10 L. R. A. (N. S.) 149); State *v.* Laylin, 69 Ohio St. 1 (68 N. E. 574); Weston *v.*

Ryan, 70 Neb. 211 (97 N. W. 347). This liberal interpretation applies rather to the manner of compliance with constitutional requirements in regard to amendments than to a total omission or disregard of such a requirement. It has not generally been held that an essential requirement could be entirely omitted, nor does the present case require us to take that position. But we concur in the view that substance is more important than form, and that the will of the legislature lawfully expressed in proposing an amendment, and the will of the people expressed at the proper time and in the proper manner at the ballot-box, in ratifying such amendment, ought not to be lightly disregarded and set at naught, even if an executive or ministerial officer should not strictly comply with his duty in connection with matters of detail, regarding the publication, or the like, and which do not appear to have substantially affected the result." See also *Houser* v. *Hartley,* 157 *Ga.* 137, 144 (120 S. E. 622) ; *Madronah Sales Co.* v. *Wilburn,* 180 *Ga.* 837 (181 S. E. 173). In the present instance the votes were overwhelmingly in favor of the amendment; and by reference to the tabulation of the votes in the congressional districts, as shown by the record before us, and in which it is alleged that irregularities of the described nature occurred, it is apparent by calculation that even in those districts nearly 81 per cent. of the votes cast were in favor of the amendment. There is no allegation of fraud or intimidation of voters; and in view of the facts and the law as to substantial compliance in such a case, we do not think that there was any such failure to comply with the constitutional provision as would require this court to declare that the amendment was not legally ratified.

■ From what is said it follows that the petition did not set forth a cause of action, and that the court did not err in sustaining the demurrer and in refusing to grant an injunction.

*Judgment affirmed. All the Justices concur.*