Sandell v. City of Omaha.

GUSTAVE A. SANDELL ET AL., APPELLEES, V. CITY OF OMAHA, APPELLANT.

FILED JULY 26, 1927.   No. 26028.

1. Municipal Corporations: CHARTERS. "The purpose of the constitutional provision (section 2, art. XI) is to render cities independent of state legislation as to all subjects which are of strictly municipal concern; therefore as to such matters general laws applicable to cities yield to the charter." *Consumers Coal Co. v. City of Lincoln,* 109 Neb. 51.

2. ———: ———: AMENDMENT: PUBLICATION. Publication March 7, April 21, and May 5, of the full text of a proposed municipal home rule charter amendment to be voted on by the qualified electors at a general election to be held May 6 is a substantial compliance with section 4, art. XI of the Constitution, relating to that subject.

APPEAL from the district court for Douglas county: WILLIAM G. HASTINGS, JUDGE. *Reversed.*

*Dana B. Van Dusen, John F. Moriarty* and *Thomas J. O'Brien,* for appellant.

*Hasselquist & Chew, contra.*

*H. M. Baldridge* and *L. J. Te Poel, amici curiæ.*

Heard before ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ., and L. S. HASTINGS, District Judge.

DEAN, J.

The city of Omaha has a population of more than 200,-000 inhabitants and is governed by a home rule charter pursuant to the provisions of article XI of the Nebraska Constitution.

Gustave A. Sandell and 87 others joined as plaintiffs in this suit in the district court for Douglas county to enjoin the city of Omaha, and Otto Bauman as city treasurer, from collecting or attempting to collect certain taxes which were levied and assessed by the mayor and city council "upon their property and upon the property of all others similarly situated" for the cost of "paving and curbing Lincoln boulevard, between Dodge street and Burt street, and Turner boulevard, between Dodge street and Farnam street," adjoining certain city real estate which is individually and severally owned by plaintiffs. The contention is that the levy is unconstitutional. A judgment was rendered in favor of plaintiffs. The city has appealed.

In their petition, plaintiffs pleaded the following:

"Plaintiffs aver that the acts and proceedings of defendant are void, unlawful, unenforceable, the confiscation of plaintiffs' property, the taking of plaintiffs' property without due process of law and * * * without just compensation, in violation of the Constitution of the state of Nebraska and of the United States of America, and the assessment of taxes disproportionate to benefits, *ultra vires,* and without authority of law, and especially as follows: (a) That the defendant, the city of Omaha, pursuant to an ordinance No. 12,041, which was presented to the city council on February 13, 1924, and passed by that body on March

4, 1924, attempted to amend the charter of the city of Omaha as provided and set forth in said ordinance No. 12,041. * * * In this connection plaintiffs aver that defendant, the city of Omaha, pursuant to ordinance No. 11,310, at an election held July 18, 1922, and pursuant to authority granted by the Constitution of the state of Nebraska, the city of Omaha adopted the charter of the city of Omaha as a home rule charter of such city and thereafter, and on the date above referred to, attempted to amend said city charter. Plaintiffs aver that it is provided by the Constitution of the state of Nebraska, being section 5 of art. XI: 'The charter of any city having a population of more than one hundred thousand inhabitants may be adopted as the home rule charter of such city by a majority vote of the qualified electors of such city voting upon the question, and when so adopted may thereafter be changed or amended as provided in section 4 of this article, subject to the Constitution and laws of the state.' "

Section 4 of the article above referred to provides: "The city clerk of said city shall publish with his official certification, for three times, a week apart in the official paper of said city, if there be one, and if there be no official paper, then in at least one newspaper published and in general circulation in said city, the full text of any charter or charter amendment to be voted on at any general or special election."

The record shows that the charter amendment was not published "three times, a week apart," and from this fact plaintiffs argue that the amendment and, of course, the assessment of taxes made thereunder are void. It is, however, agreed that "the full text" of the proposed charter amendment was published in the official newspaper, the Omaha Evening Bee, "on March 7, 1924, April 21, 1924, and May 5, 1924, and at no other time."

*State v. Winnett*, 78 Neb. 379, is an original proceeding in *quo warranto* wherein the state challenged the right of the respondent claimants, under an amendment to the Constitution, to hold the office of state railway commissioners,

an office which was subsequently held by this court to have been created by the adoption of a duly submitted constitutional amendment by the votes of the required number of electors. In the *Winnett* case, section 1, art. XV of the Constitution (now art. XVI) is cited, which, so far as applicable here, provides:

"Either branch of the legislature may propose amendments to this Constitution, and if the same be agreed to by three-fifths of the members elected to each house, such proposed amendments shall be entered on the journals, with the yeas and nays, and published once each week in at least one newspaper in each county, where a newspaper is published, for three months immediately preceding the next election of senators and representatives."

The *Winnett* case points out that "the proposed amendment was not 'published once each week in at least one newspaper in each county where a newspaper is published, for three months immediately preceding' the election at which it was submitted to the voters as required by section 1, art. XV (now art. XVI), of the Constitution." It appears that the parties in that case had entered into a stipulation of facts, and the court, continuing, said:

"The facts above quoted from the stipulation show that there has not been a literal compliance with this clause of the Constitution. The election was held on the 6th day of November. The three months named in the Constitution are three calendar months and would include the period of time commencing with the beginning of the 6th day of August (*McGinn v. State*, 46 Neb. 427), and to comply literally with this provision the first publication must be before that day. There was but one paper published in Logan county, and it appears that the proposed amendment was not published in that county until August 9, four days later than the limit prescribed by the Constitution. This is the most serious irregularity disclosed in the matter of the publication. It is therefore unnecessary to discuss other irregularities because, unless this failure in Logan county to comply with the letter of the Constitu-

Sandell v. City of Omaha.

tion requires us to conclude that the amendment is invalid, the other specified irregularities, which are of a less serious nature, are not sufficient to require such conclusion."

It may be observed that in the *Winnett* case several instances are pointed out wherein the .proposed amendment was not published in some of the newspapers as the Constitution required. Nevertheless, we there held, as above noted, that the publication was a substantial compliance with the constitutional requirement.

Counsel for the defendant city also cite and rely on the rule announced in *Baker v. Moorhead,* 103 Neb. 811, wherein we held that a construction of a provision of the Constitution which would make difficult or impossible any fair and just method of revising the Constitution will not be adopted by the courts. And in *People v. Sours,* 31 Colo. 369, in respect of an attack upon a Constitutional amendment, the court held that, where an amendment to such Constitution is attacked after its ratification by the people, every reasonable presumption, both of law and fact, is to be indulged in favor of its validity. And Judge Dillon said: "Provisions of the freeholders' charter which are purely municipal in their character supersede provisions of the general laws which are inconsistent therewith." 1 Dillon, Municipal Corporations (5th ed.) sec. 63, p. 116. On principle the same rule applies here that is pointed out in the *Moorhead* and the *Sours* cases, above cited, and in the cases following.

The case entitled *Constitutional Prohibitory Amendment,* 24 Kan. 700, is relied on by the city. This is one of the leading cases on the subject now before us. The opinion was written by Judge Brewer, afterward a justice of the United States supreme court. The case involved the validity of a proposed amendment to the state Constitution of Kansas. In respect of certain alleged irregularities in the matter of the adoption of constitutional amendments, the learned judge observed: "Those omissions and errors which work no wrong to substantial rights are to be disregarded. * * * The central idea

of Kansas law, as of Kansas history, is that substance of
right is grander and more potent than methods and forms.
The two important, vital elements in any constitutional
amendment are the assent of two-thirds of the legisla-
ture, and a majority of the popular vote. Beyond these,
other provisions are mere machinery and forms. They
may not be disregarded, because, by them, certainty as
to the essentials is secured. But they are not themselves
the essentials. Take a strong illustration: The Consti-
tution requires that the 'secretary of state shall cause the
same to be published in at least one newspaper in each
county of the state where a newspaper is published, for
three months preceding,' etc. Suppose a unanimous vote
of both houses of the legislature, and a unanimous vote
of the people in favor of a constitutional amendment, but
that the secretary had omitted to publish in one county
in which a newspaper was published, would it not be simply
an insult to common sense to hold that thereby the will
of the legislature and people had been defeated? Is it
within the power of the secretary, either through ignor-
ance or design, to thwart the popular decision? Is he
given a veto, or can he create one? This may be an ex-
treme case, but it only illustrates the principle. The rec-
ords of the proceedings of the two houses are made, not
by the houses themselves, but by clerical officers. True,
they are under the control of the respective houses, but
in fact the records are made by clerks. May they defeat
the legislative will? The Constitution does not make amend-
ments dependent upon their approval or their action. To
insure certainty and guard against mistake, journal evi-
dence of the amendment and votes is prescribed, but this
is mere matter of evidence, and not the substantial con-
dition of constitutional change."

Counsel for plaintiffs contend that under section 3, art.
III of the city charter, the council has jurisdiction to
pave all streets "except boulevards." But, in one of the
briefs for the defendant city, its author points out that
section 3 was lawfully amended by substituting the words,

"including improvements upon boulevards," for the words, "except boulevards," and that this amendment and "three other proposed amendments to the city charter (were submitted), all of which received the necessary vote," and all were adopted by the electors.

In *Consumers Coal Co. v. City of Lincoln,* 109 Neb. 51, in an opinion by Redick, D. J., this timely observation is made, in respect of the power of a city council to adopt a home rule charter for the government of the city: "The purpose of the constitutional provision is to render cities independent of state legislation as to all subjects which are of strictly municipal concern; therefore, as to such matters general laws applicable to cities yield to the charter." And in the body of the opinion this is said: "We hold that the city may by its charter under the Constitution provide for the exercise by the council of every power connected with the proper and efficient government of the municipality, including those powers so connected, which might lawfully be delegated to it by the legislature, without waiting for such delegation. It may provide for the exercise of power on subjects, connected with municipal concerns, which are also proper for state legislation, but upon which the state has not spoken, *until* it speaks. *City of Spokane v. Spokane & I. E. R. Co.,* 75 Wash. 651. Its position in this regard being analogous to that of the state with reference to matters of national cognizance, *e. g.,* regulation of commerce." And in the same case, this is said: "It is not easy in all cases to distinguish between municipal powers and state powers. * * * We must therefore content ourselves with the consideration of each case as it arises, applying those principles which precedent and logic approve."

It may be noted that the above *Consumers Coal Company* case exhaustively discussed the subject under consideration here and cites from the Constitution, and many leading authorities, in respect of the powers conferred by the fundamental law upon the people of a municipality for self-government.

Sandell v. City of Omaha.

The trend of judicial pronouncement appears to sanction an enlargement of the powers of the municipality for self-government, within constitutional limits, rather than a curtailment of such powers. And this on the broad and reasonable assumption that the city, in the formation of its charter, knows better than the legislature how to anticipate and to enact needful city ordinances. The following cases fairly appear to support the rule announced in the *Winnett* and *Consumers Coal Company* cases and we adhere to the rule so announced. *Standard Oil Co. v. City of Lincoln,* 114 Neb. 243, and cases there cited at. pages 249, 250, and 252; *Mitchell v. Carter,* 31 Okla. 592; *City of St. Louis v. Gleason,* 15 Mo. App. 25; *Meier v. City of St. Louis,* 180 Mo. 391; *State v. Telephone Co.,* 189 Mo. 83; *State v. O'Connor,* 81 Minn. 79.

There is some contention between the parties in respect of the condition of the boulevards before the new paving was laid. On the part of the defendant city the argument, and a preponderance of the evidence, discloses that the streets were then bumpy, and that, in the language of some of the witnesses, the surface "feathered out" and cracked in the vicinity of the gutters, and that the boulevards had been so frequently repaired that in many places the concrete might be from 8 to 12 inches in thickness and yet be very thin and ready to break through in the immediate vicinity.

Other questions are raised and discusssed at some length, but, upon a review of the facts and the law applicable thereto, it clearly appears to us that both the amendment and the assessment of the taxes complained of constituted a valid exercise of councilmanic power, and they do not therefore offend against the fundamental law. The weight of the evidence clearly appears to support this view.

Publication March 7, April 21, and May 5, of the full text of a proposed municipal home rule charter amendment to be voted on by the qualified electors at a general election to be held May 6 is a substantial compliance with

section 4, art. XI of the Constitution, relating to that subject.

The judgment of the district court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

REVERSED.