## Gaines et al. v. O'Connell.

September 19, 1947.

W. B. Ardery, Judge.

398

Lewis & Asher and Charles I. Dawson for appellants.

Eldon S. Dummit, Attorney General, Ben Fowler, Assistant Attorney General, Stoll, Townsend, Park, Mohney & Davis, and Allen, McElwain, Dinning, Clarke & Ballantine for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The case presents two questions concerning the actions taken by the General Assembly and the Secretary of State for holding a referendum "to take the sense of the people of the state as to the necessity and expediency of calling a convention for the purpose of revising or amending" the Constitution of Kentucky. One question is presented in a suit by a representative taxpayer, and a group of citizens opposing the convention as intervenors, to have the Acts of the Legislature declared invalid and to enjoin the Secretary of State from pro-

ceeding with preparations for the election. It is based on an alleged illegal expenditure of public money. The other question is presented in a cross action by a group of intervening citizens favoring the convention, in which they have sought a judicial declaration that the provision of the Acts which require that the Convention, if held, submit its production to the people for ratification is valid and binding.

The circuit court held that the Acts are valid and enforceable and that the Secretary of State had the authority to cause notice of the election to be published as he had already done. He was directed to proceed with the performance of his duties. The court further adjudged that the provision requiring that the work of the Convention be submitted to the people for ratification is valid and enforceable. The plaintiffs have appealed and seek the opposite judgment. The importance of the case compels the court's careful and serious consideration in its determination.

## I

In conformity with Section 258 of the Constitution, the General Assembly of 1944 passed an Act to the end stated (Chapter 4), and the General Assembly of 1946, c. 145, concurred and made provision for the election to be held on November 4, 1947.

Section 263 of the Constitution reads as follows: "Before a vote is taken upon the question of calling a Convention, the Secretary of State shall cause notice of the election to be published in such manner as may be provided by the act directing said vote to be taken."

But the General Assembly made no provision for publishing notice of the election. Therein lies the difficulty.

Notwithstanding the absence of such explicit provision, on the day the petition in this case was filed, on the advice of the Attorney General, the Secretary of State caused publication of notices to begin in Louisville and Lexington newspapers of general circulation throughout the State. This was 78 days before the election. An amended petition met the changed status, but the form or duration of the publication was not questioned.

The primary contention of the appellants is that since the Legislature failed to prescribe the manner of publication of notice, the Secretary of State was without authority to do so, hence his action is abortive. The real question is not the constitutionality of the Acts of the Legislature but whether they are operative.

The argument of the appellants is that all of Section 263 is mandatory; that the Secretary of State is required to cause notice to be published in a manner prescribed by the Legislature and in no other way; hence it is also mandatory on the Legislature so to prescribe, and it failed. The argument is no ingenious refinement, or one without merit. It seems to be sustainable by a strict construction of the Constitution.

The contention of the appellees is that the word "shall," used in Section 263 in relation to the duties of the Secretary of State, makes the provision mandatory as to him, but the word "may," used in relation to the manner of publication to be prescribed by the General Assembly, being a word of permission or discretion, leaves it open for that body to prescribe the manner or not to do so; hence, its omission cannot cancel the obligatory duty of the Secretary of State. It is submitted that the Legislature having failed to exercise the power, the official was nevertheless required to perform his duty under the self-executing provision applying to him, and in doing so he has properly exercised a prudent and reasonable judgment as to what was adequate.

It has often been said that all the provisions of the Constitution are mandatory. It began with Bliss v. Commonwealth, 12 Ky. 90, 2 Litt. 90, 13 Am. Dec. 251. But this broad statement is subject to the qualification, just as often declared, that they are not to be so regarded if by express language or necessary implication a different intention is manifest. It is a cardinal rule of construction that no part of the Constitution should be construed so as to defeat its substantial purpose or the reasonable intent of the people in adopting it. Cooley, Constitutional Limitations, 124, 130. What is implied is as much a part of the instrument as what is expressed. 11 Am. Jur., Constitutional Law, sec. 56. Wherever the language admits a doubt, it is presumed that it was intended to be in accordance with generally recognized rules and

principles of public policy. Still another familiar concomitant rule, no less binding on the courts, is that all presumptions and all reasonable doubts are to be resolved in favor of constitutionality of any act of the General Assembly. Jefferson County v. Jefferson County Fiscal Court, 273 Ky. 674, 117 S. W. 2d 918; Bowman v. Frost, 289 Ky. 826, 158 S. W. 2d 945.

The foregoing are canons of construction applicable to legislation of the usual character. A fortiori, are they applicable to the present inquiry. We are not dealing with pure legislation affecting commercial or personal affairs, nor with legislation with which the people in their capacity of electors have nothing to do. We are dealing with machinery and procedure under the Constitution. The actions of the Legislature and the Secretary of State are but steps toward the end. The great mass of the electors of the Commonwealth constitutes the body which considers and determines the question of whether there shall be a constitutional convention. Their vote is the paramount act. The framers of the Constitution well appreciated that this is a government by the people and that a revision of the organic law must be made by them. They well knew that substance is supreme and more potent than method and form. Method and form may not be disregarded, to be sure, for by them the essentials are secured. But they are not themselves the essentials. We are dealing with a matter in which the sovereign people are vitally concerned—with the inherent right of the people to express themselves with respect to revising their charter of government. It is sound and proper to hold that a case of this character requires an extremely liberal construction, just as would an Act which might violate the Bill of Rights require a rigid construction in order to protect the people.

We are not without precedent. In Green v. Weller, 32 Miss. 650, 684, it was said in reference to the adoption of an amendment to a constitution: ''The means provided for the exercise of their sovereign right of changing their Constitution should receive such a construction as not to trammel the exercise of the right.''

In Baker v. Moorhead, 103 Neb. 811, 174 N. W. 430, 431, it was held in reference to a statute defining the

manner of electing delegates to a constitutional convention (as stated in the syllabi prepared by the court):

"The general rule that the provisions of a Constitution will be construed as mandatory, rather than directory, does not apply with the same strictness to provisions of the Constitution providing for future constitutional conventions, as it applies to other parts of the Constitution"; and

"A construction of a provision of the Constitution which would make difficult or impossible any fair and just method of revising it will not be adopted by the courts."

See to the same effect, In re Opinion of the Justices, 88 N. H. 495, 190 A. 712; Sandell v. City of Omaha, 115 Neb. 861, 215 N. W. 135.

Our own case of Denton v. Pulaski County, 170 Ky. 33, 185 S. W. 481, 483, involved the construction of that part of Section 256 of the Constitution which provides that where a majority of votes were cast for an amendment it shall become a part of the Constitution "and shall be so proclaimed by the Governor, and published in such manner as the General Assembly may direct." The Legislature had provided for publishing the result of the election but not as to how an adoption should be proclaimed or published. The result had been so published and the Governor had recommended appropriate action by the Legislature to effectuate the amendment, but there was no formal proclamation. We said: "In the absence of legislative action prescribing the particular manner in which an amendment shall be proclaimed and published, we conclude that the foregoing steps constituted a substantial compliance with the Constitution." The decision was influenced by the relative unimportance of the official post-election procedure. The people well knew the effect of a majority vote.

The Constitution clothes the General Assembly with the power to initiate the proceedings for a convention. It assumes that the legislature will appropriate the entire machinery of the general election law, changed only by explicit provisions in order to make it workable for the unusual purpose. Publication of notice of the election is not an act of finality but of procedural detail.

It has been done in this instance in a manner sanctioned many times in many circumstances by statute and by custom. With the exception of the time element, it has been in strict accordance with the statute relating to notice of elections on adopting amendments to the Constitution. Ky. Rev. Stats., 118.430. Moreover, the Court has judicial knowledge that the members of both Houses at both sessions of the General Assembly have with practical unanimity concurred in the submission to the people of the question of the expediency of calling the Convention. We cannot feign ignorance of the fact that in addition to the official publication the issue has been and is being given widespread publicity in the press and public forums of the State; a greater and better publication than has been or could be given in formal official notice, which, as a matter of fact, is always quite inconspicuous. The object of Section 263 of the Constitution is clear. It is that the people shall know about the referendum which their Legislature has authorized. It has been and is being accomplished.

With this broad prospective and sensible view, the court ought not nullify this vast political operation, stop the machinery and thereby prevent an expression of the popular will unless a sure sensibility of constitutional duty demands it. To do so would be by a rigid construction of the Constitutional processes and, as we feel, by ignoring the underlying aim and object of the instrument as expressed in Section 263. It would be to surrender reality for technicality, substance for form, and common sense for pure legalism.

We are of opinion that the action taken by the Secretary of State in the absence of specific statutory direction, and the legal effect of that action, can be consistently and reasonably sustained. The conclusion rests not only upon the considerations already recited, but more particularly the analysis of the six sections of the Constitution relating to a Convention.

Section 258 is addressed to the General Assembly and also to the Secretary of State in prescribing his duties after an election has been held. It is meticulous. Sections 259, 260 and 261 are addressed to the members of the Convention. Section 262 deals with contests of election of delegates and is addressed to the Convention

and the General Assembly. The series concludes with Section 263, which we have quoted. It is addressed to the Secretary of State—not to the General Assembly. It is significant, we think, that the framers of the Constitution in the same sentence used the mandatory word "shall" in relation to the official upon whom they placed the duty, and used the word "may" in relation to the General Assembly. They well knew the distinction. The word "may" generally carries the meaning of permission or option; but that was not necessary here, for the Legislature has all power except where restricted by federal or state constitutions. Board of Education v. City of Louisville, 288 Ky. 656, 157 S. W. 2d 337. It is seldom used in the sense of permission except to qualify or exclude from a mandatory provision. See for an example, Scott v. McCreary, 148 Ky. 791, 147 S. W. 903. The word often imports contingency, and the clause "may be" is the equivalent of possibly or perhaps. Webster's New International Dictionary. That, we think, is the sense in which the clause was used here. It is also of significance that in the several sections relating to the duties of the General Assembly the word "shall" is used exclusively. Therefore, it is only by implication that it can be said that Section 263 places the exclusive duty upon the General Assembly to prescribe the manner of notice—how, when and what—to be followed by the Secretary of State. It is only assumed that the General Assembly will provide the manner.

It may be noted as a matter of interest, if not of significance, that Section 263 is the last in the category, though it would seem a logical arrangement would place it next to Section 258 as a part of the machinery for holding the election rather than with the post-election sections. It may possibly have been an afterthought in the preparation of the title "Mode of Revision," though there is nothing in the Constitutional Debates that sheds any light on the unusual arrangement, or, indeed, on the whole problem as to the proper construction of the section.

The Legislature may have construed Section 263 as not requiring that it should provide the manner of publication, and believed the usual and generally recognized practices would not only be observed but be sufficient. The doctrine of presumption of constitutional validity

stems from the fact that the members of the General Assembly take an oath to support the Constitution and frame their legislation according to their interpretation of it. See City of Louisville v. Kuhn, 284 Ky. 684, 145 S. W. 2d 851.

All enactments of this general character are carried into execution by officers elected or appointed for the purpose, and these are often clothed with authority which necessarily involved a large degree of discretion. The Constitution, as do the statutes, seldom defines with precision the scope of official duties. True it is, as the appellants say, and as we have recognized above, where a power is conferred by the Constitution it must be exercised in the way directed by law. But many incidents are based on what may be necessarily implied from duties or powers expressly conferred. The leading case of Varney v. Justice, 86 Ky. 596, 6 S. W. 457, in which the principle above stated was emphatically laid down and enforced, and the several cases following, are distinguishable, for there were clear and explicit constitutional directions.

We cannot accede to appellants' alternative argument, that, in any event, the publication of notice commencing 78 days before the election is not due and timely. It rests upon the application of Section 257 of the Constitution, which requires that such notices as to an election on the adoption of an amendment must be begun not less than 90 days before. See Harrod v. Hatcher, 281 Ky. 712, 137 S. W. 2d 405. This is an explicit provision in that section only, and is exclusive in its application. There is reason why a more extended official notice should be given in such a case, for the result of the election itself makes the change in the fundamental law. In the calling a Convention, the result has no finality. It is a step, and a very important one, but it is not the ultimate end.

We conclude by again recognizing that the substantial execution of the clear intent and the accomplishment of the object of the constitutional provision is the essential and dominant thing. It is that which governs our decision to affirm the judgment on this issue.

## II

We come to consider the legal effect of the follow-

ing direction to the proposed Constitutional Convention contained both in the Act of 1944 (Chapter 4) and the Act of 1946 (Chapter 145) concurring and making provision for the referendum: "Before any Constitution agreed upon by a convention that may be called pursuant to this Act and to Section 258 of the present Constitution shall take effect and become operative, the same shall be submitted to ·the qualified voters of this Commonwealth, after at least ninety days' notice, and ratified by a majority of those voting."

The challenge of this limitation upon the Convention, if one should be held, is that the constitutional provisions with respect to this mode of revision deal with every phase of the calling, organization and duties of a convention, and contain no authority for the General Assembly to bind the members to submit their work to a vote of the people. Hence, it is argued, the framers of the present constitution did not intend to confer upon the Legislature the power to restrict or limit the action of the convention.

The Act of the Legislature initiating the call for the convention which framed our present constitution contained a similar provision. The constitution of the time, that of 1851, had no provision giving the Legislature the power to require a submission of the work of the convention to a vote of the people. The instrument was submitted to the people and approved by a large majority. Thereafter the delegates reassembled and made numerous changes in the instrument. As thus altered, it was proclaimed as the Constitution of Kentucky. In a notable opinion, this court, then composed of four judges, held that since the Constitution had been promulgated according to law and its validity had been recognized by both the executive and legislative branches of the government, it was not within the power of the judiciary to declare the instrument not to be the Constitution. The question was regarded as a political and not a judicial one. Miller v. Johnson, 92 Ky. 589, 18 S. W. 522, 15 L. R. A. 524, 526. The majority opinion recognized the divergent views of the courts and constitutional authorities on the subject of the power of a legislature to bind a constitutional convention, but expressed no opinion concerning either view. In an able dissenting opinion, Judge Bennett contended that all material changes which

had been made by the Convention after it reassembled were void. He reasoned that there was no authority in the members to alter the instrument (except to make grammatical corrections) because "the delegates to the convention of 1890-91 were expressly limited in their authority. The people refused to give them absolute power, but reserved to themselves the right to approve or reject the work of their agents, which they, however, disregarded." Therefore, the question is an open one in this jurisdiction.

It has been held by some courts that a constitutional convention derives its powers from the action of the people and not from that of the Legislature which may have issued the call; that it exercises sovereign, plenary power, subject only to the limitations on the powers of the State contained in the Constitution of the United States. Hence, that an act of a legislature expressly providing that no constitution or amendments framed by a convention should go into effect until submitted to the vote of the people and approved by them is not binding and need not be observed if the convention so wills. This conception or doctrine, that a constitutional convention inherently possesses unlimited sovereign power, seems to have had its origin in what are generally termed "Revolutionary Conventions." See 16 C. J. S., Constitutional Law, sec. 8; Jameson, Constitutional Conventions, 99-173; 7 Va. Law Register, 80. The reason for the view, therefore, fails under our firm and stable "government of law." As well said in Ellingham v. Dye, 178 Ind. 336, 99 N. E. 1, 16, Ann. Cas. 1915C, 200; Writ of Error dismissed in Marshall v. Dye, 231 U. S. 250, 34 S. Ct. 92, 58 L. Ed. 206. "No argument for the implied power of absolute sovereignty in a convention can be drawn from revolutionary times, when necessity begets a new government. Governments thus accepted and ratified by silent submission affords no precedents for the power of a convention in a time of profound tranquility, and for a people living under self-established, safe institutions."

However, under the terms peculiar to the constitutions of some states that extreme power seems to exist and the legislatures may not impose any condition upon the constitutional conventions.

It is not surprising to find in "Constitutional Conventions" by Roger Sherman Hoar, at page 71, the generally accepted rule, namely: "The theory with the greatest weight of authority behind it is based upon the fact that there would be no convention unless the people voted affirmatively, that an affirmative vote would result in holding exactly the sort of convention in every detail provided in the act, and that the people are presumed to know the terms of the act under which they vote. The conclusion drawn from this is that the convention act in its every detail is enacted by the people voting under it."

Jameson, on Constitutional Conventions, Section 417, says: "The principal reasons which such legislation as is necessary to submit to the people the fruits of the deliberations of a Convention, should be performed by the legislature, are, first, that that legislation is not fundamental in its character; and secondly, that a legislature, and no other body, is, under our Constitutions, competent to perform that work, and that the legislature has no constitutional authority to delegate the right to perform it to any other body."

A clear statement, fully sustained by the weight of authority, is made in Re Opinion to the Governor, 55 R. I. 56, 178 A. 433, 452, as follows: "In the second instance, the Legislature summons the convention only after the people have expressed their will to this effect. If, at the time the question of calling the convention is submitted to them, the people are informed of the scope of the convention and the manner in which it is to conduct its deliberations, and report its results by virtue of the act of the General Assembly specifying such matters, then a convention called in this manner will be limited as therein set forth and the convention will then be bound to confine itself within the stated limits of the act of the Assembly. The reason for this is that it is the people, under such circumstances, who prescribe the conditions in the legislative act by approving the call for the convention in accordance with the provisions of such act. The Legislature merely proposes the conditions. It is the vote of the people for the convention that ratifies them and makes them binding upon the delegates."

This view was recently accepted by our sister state of Virginia, in Staples v. Gilmer, 183 Va. 613, 33 S. E. 2d 49, 57, 158 A. L. R. 495. In that case the General Assembly, as a means of obtaining quicker amendment of the constitution to liberalize voting rights of members of the armed forces than could be had through the submission of separate amendments, provided for a vote of the people on calling a convention to accomplish the purpose. The act limited the convention to the consideration of two changes only and authorized it to proclaim and ordain the revisions adopted within the scope of the powers conferred upon it by the act without submitting the same to the electors for approval. Reviewing the principle and the authorities, the court held the limitations valid and binding. In a concurring opinion by Judge Holt, it is well said: "It is good to know that they (the conclusions of the court) find ample support in ancient precedents and modern instances. * * * [And] it is interesting to note that nowhere are provisions made for an unrestricted convention. Such a convention would be a revolutionary convention, but provisions are made for a convention to revise the Constitution and amend the same. The extent of this revision or of these amendments is nowhere defined."

Since the constitution of Kentucky likewise contains no inhibition or restriction upon the General Assembly in this matter of initiating a call for a Constitutional Convention, it was at liberty to exercise its plenary power in attaching the condition to the submission of the question of calling a convention. When they vote upon it, they will do so with the assurance that the result of the deliberations of the Convention, if called, will be submitted to them for ratification or rejection. By this course, the people keep a firm hold upon their liberties and may obtain a charter of government wanted by the majority. This is sustained by the customs and traditions of the Commonwealth, as well as principles of constitutional government. If the instrument be approved, then the people of the Commonwealth will literally "ordain and establish" the new Constitution.

We are of opinion, therefore, that the judgment to that effect is correct.

The judgment is affirmed.