**OPINION OF THE JUSTICES of the Supreme Court in Response to Questions Propounded by the Governor of Delaware.**

Supreme Court of Delaware.

March 12, 1971.

of the Justices upon the proper construction and application of the three-month publication requirement of Article 16, § 1 of the Delaware Constitution, Del.C.Ann.[1] governing constitutional amendments.

One of your letters sets forth the following factual basis for the inquiry:

"1) The following Constitutional Amendments, contained in the bills indicated were 'proposed' by the 125th General Assembly:

| House Bill No. 59 | Proposed May 13, 1969 |
|---|---|
| Senate Bill No. 42 | Proposed May 28, 1969 |
| House Bill No. 49 | Proposed May 28, 1969 |
| Senate Bill No. 170 | Proposed June 19, 1969 |
| Senate Bill No. 11 | Proposed June 24, 1969 |
| House Bill No. 133 | Proposed May 27, 1970 |
| Senate Bill No. 98 | Proposed June 2, 1970 |

The texts of the above proposed Amendments were printed in full together in the following newspapers on the dates indicated below:

| | | |
|---|---|---|
| New Castle County | Wilmington Evening Journal | August 8, 1970 |
| | New Castle Gazette | August 12, 1970 |
| | Weekly Post | August 12, 1970 |
| Kent County | The Smyrna Times | August 6, 1970 |
| | Delaware State News | August 6, 1970 |
| | The Harrington Journal | August 6, 1970 |
| Sussex County | Delaware Coast Press | August 7, 1970 |
| | The Sussex Countian | August 8, 1970 |
| | Milford Chronicle | August 8, 1970 |

2) The following Constitutional Amendments were 'proposed' by the 125th General Assembly in the bills and on the dates indicated. Their texts have never been printed in full in any newspaper:

| House Bill No. 139 | Proposed May 19, 1970 |
|---|---|
| Senate Bill No. 644 | Proposed June 22, 1970" |

To His Excellency Russell W. Peterson Governor of Delaware

Reference is made to your letters, dated February 18, 1971, requesting the opinions

[1]. Del.Const., Art. 16, § 1 provides as follows:

"Section 1. Any amendment or amendments to this Constitution may be proposed in the Senate or House of Representatives; and if the same shall be agreed to by two-thirds of all the members elected to each House, such proposed amendment or amendments shall be entered on their journals, with the yeas and nays taken thereon, *and the Secretary of State shall cause such proposed amendment or amendments to be published three months before the next general election in at least three newspapers in each county in which such newspapers shall be published;* and if in the General Assembly next after the said election such proposed amendment or amendments shall upon yea and nay vote be agreed to by two-thirds of all the members elected to each House, the same shall thereupon become part of the Constitution." (Emphasis supplied)

The other of your letters sets forth the following factual basis for the inquiry:

"The facts are that on June 30, 1970, the 125th General Assembly proposed a Constitutional Amendment in House Bill No. 711. The text of this proposed Amendment has never been published in full in three newspapers in each county. However, the Amendment and its contents were made known to the public by the following means:

1) The original proposal of the Constitution Revision Commission was printed in full in each of the News-Journal papers on June 2 and June 3, 1969. The proposed Amendment, as passed in House Bill No. 711, was changed little from the Commission draft.

2) Editorials and most State newspapers commented on the proposed Amendment and its parts.

3) Radio and TV news reporters mentioned the proposed Amendment and reported its legislative progress.

4) Guests and callers on radio 'talk shows' discussed and offered opinions on the proposed Amendment.

5) Radio commentators gave views on the proposed Amendment.

6) Legislators and candidates for office spoke about and discussed the proposed Amendment.

7) The League of Women Voters asked each candidate for the General Assembly his opinion on the proposed Amendment and the replies were compiled and published in the News-Journal papers.

8) Civics classes in State high schools held discussions on the proposed Amendment.

9) Both houses of the General Assembly held extensive hearings on House Bill No. 711.

10) The Constitution Revision Commission held extensive well-advertised hearings in all three counties.

11) Copies of the proposed Amendment were made available to the public on request."

It is noted that you require the opinions "for public information" under the provisions of 10 Del.C. § 141.[2]

## I.

We address ourselves first to the status of those certain proposed Amendments the texts of which were in fact published in newspapers in each county, but which were not published "three months before the next general election" of November 3, 1970. It appears that in New Castle County, the publication was 85 days before Election Day in one newspaper[3] and 81 days prior thereto in the other two newspapers. In Kent County, the publication in all three newspapers took place 87 days before Election Day. In Sussex County, the publication occurred 86 days before Election Day in one newspaper and 85 days prior thereto in the other two newspapers. Otherwise stated, the publications were late by 5 days or less of the three-month period, except for the 9-day delay in the New Castle County weekly newspapers.

2. 10 Del.C. § 141 provides:
"§ 141. Opinions of the Justices upon request of the Governor
"The Justices of the Supreme Court, whenever the Governor of this State shall require it for public information, or to enable him to discharge the duties of his office with fidelity, shall give him their opinions in writing touching the proper construction of any provision in the Constitution of this State or of the United States, or the constitutionality of any law enacted by the Legislature of this State."

3. It is noteworthy that this 85-day publication was made in the Wilmington Evening Journal which has state-wide circulation.

## II.

The determinative question thus emerges: Does Del.Const., Art. 16, § 1 require literal compliance with the time provisions for publication, or is substantial compliance therewith sufficient?

Publication requirements for proposed constitutional amendments, such as those set forth in Art. 16, § 1, are commonplace in state constitutions. While the authorities are not uniform, it is generally agreed that it is sufficient if there is substantial compliance with such publication requirements. Literal compliance is not generally required so long as it is clear that the electorate has not been misled and that the purpose and intent of the constitutional provision has been actually fulfilled by publication for a substantial part of the prescribed period. See generally 16 Am. Jur.2d "Constitutional Law", § 35; 16 C.J. S. Constitutional Law § 9(3).

The rationale of the substantial compliance rule most acceptable in our view is that while the constitutional publication requirements are mandatory, they are essentially procedural; that a rigid adherence to such procedural mandate will not be required if it is clear that a substantial compliance provides realistic fulfillment of the purpose for which the mandate was incorporated in the constitution. While some authorities classify the publication requirements as directory rather than mandatory, we are of the opinion that they are mandatory—but subject to the substantial compliance rule.

A leading case on the substantial compliance rule is State ex rel. Morgan v. O'Brien, 134 W.Va. 1, 60 S.E.2d 722 (1948) in which it was held that publication about 60 days before Election Day was such substantial compliance with the three-month publication requirement as to permit a valid submission of the proposed amendment to the electorate. Other examples of the application of the substantial compliance rule are: State ex rel. Thompson v. Winnett, 78 Neb. 379, 110 N.W. 1113 (1907) in which publication 3 or 4 days late in the three-month period was held to be sufficient compliance; and Gaines v. O'Connell, 305 Ky. 397, 204 S.W.2d 425 (1947) in which publication 78 days before Election Day was held to be sufficient compliance with a ninety-day publication requirement. Other applications of the substantial compliance rule are found in Manos v. State, 98 Tex.Cr.R. 87, 263 S.W. 310 (1924); State ex rel. Hay v. Alderson, 49 Mont. 387, 142 P. 210 (1914); Mayer v. Adams, 182 Ga. 524, 186 S.E. 420 (1936); and State ex rel. Smith v. Kelly, 149 W.Va. 381, 141 S.E.2d 142 (1965).

We are aware of Tausig v. Lawrence, 328 Pa. 408, 197 A. 235 (1937) in which the Supreme Court of Pennsylvania held that nothing short of literal compliance with the publication mandate would suffice; but that if the Secretary of the Commonwealth transmitted the required notices to the newspaper in ample time to permit publication within the three-month period, the constitutional mandate was fulfilled even though the notices were actually a week or ten days late in appearing. Having in mind the purpose of the constitutional requirement, we do not find the rationale of the *Tausig* case to be persuasive. The other oft-cited authority for the literal compliance rule is Arnett v. Sullivan, 279 Ky. 720, 132 S.W.2d 76 (1939). It appears, however, that *Arnett* has been superseded by Gaines v. O'Connell, 305 Ky. 397, 204 S.W.2d 425 (1947) as an authority for present purposes.

We are of the opinion that the substantial compliance rule may be applied when there has been a partial compliance with the publication provisions of Art. 16, § 1. The substantial compliance rule is the rule of reason and practicality; and it is the rule supported by the prevailing weight of authority.

## III.

The next question, then, is whether there was substantial compliance in those situa-

tions before us where the texts of certain of the proposed Amendments were published in partial compliance with Art. 16, § 1.

■ First, a definition of "substantial compliance": there has been substantial compliance, we think, when there has been a partial compliance and when it is reasonable to conclude that the objective sought by the constitutional provision has been as fully attained thereby, as a practical matter, as though there had been a full and literal compliance. "Substantial compliance" means such compliance with essential requirements of the constitutional provision as may be sufficient for the accomplishment of the purposes thereof. Compare Martien v. Porter, 68 Mont. 450, 219 P. 817, 822 (1923).

This definition requires a restatement of the purpose and intent of the publication requirements of Art. 16, § 1. The purpose is to insure that the people of the State are informed, accurately and completely, of the details of a proposed amendment to the Constitution in ample time for them to ascertain the positions relative thereto of the candidates for election to the next General Assembly; and to enable the electorate to express their approval or disapproval of the proposed amendment by voting for representatives in the next General Assembly who best reflect their preference in the matter. 4 Del.Const. Debates (1897) pp. 2423, 2424, 2973, 2975, 2976; Opinion of the Justices, Del.Supr., 264 A.2d 342, 345 (1970).

■ Having in mind this purpose and intent of the publication provisions, we are of the opinion that, with respect to the proposed Amendments the texts of which were published in partial compliance with Art. 16, § 1, there was substantial compliance sufficient to fulfill the constitutional requirements. In our judgment, the electorate of the State were neither misled nor prejudiced by the fact that the publications appeared in the press from 81 to 87 days before Election Day, rather than the full three months prior thereto. Clearly, the people of the State had abundant time and were equally able to inform themselves of the proposed Amendments and the attitude of the candidates for election to the General Assembly with respect thereto, despite the few days' delay.

It is our opinion, therefore, that there was legal publication sufficient under Art. 16, § 1 to permit the following proposed Amendments to "become part of the Constitution" by action of the 126th General Assembly: H.B.Nos.49, 59, and 133; and S.B.Nos.11, 42, 98, and 170.

■ In approving the substantial compliance rule, we note a caveat: a determination of substantial compliance depends upon the circumstances of each case. Any extension of the substantial compliance principle must be carefully guarded and limited in order that mandatory provisions of the Constitution may not be unduly subverted. The line of substantial compliance, therefore, must be carefully drawn and observed. We are satisfied that in the situation before us, because of the very short periods of tardiness involved, the line has not been crossed.

## IV.

■ We turn now to those certain proposed Amendments as to which there was no compliance at all with the publication requirements of Art. 16, § 1—not even partial compliance.

It seems clear that substantial compliance may not be predicated upon no compliance. As we have stated, the constitutional provisions for publication are mandatory; they may not be ignored even though something less than literal compliance may be acceptable under certain circumstances. The Constitution sets forth, clearly and unmistakably, what must be done in order to change the fundamental law. Failure to comply therewith, at least substantially, is fatal to any effort to follow another course. Other channels of

publicity, used at other and different times, may supplement the publication provisions of Art. 16, § 1; but they may not be substituted therefor; for to do so would be to engraft new and different procedures upon Art. 16, § 1 and to rewrite the constitutional specifications for a very important stage in the amendatory process. Compare State ex rel. Hall v. Cline, 118 Neb. 150, 224 N.W. 6 (1929).

Accordingly, it is our opinion that the proposed Amendments contained in S.B.No. 644 and H.B.Nos.139 and 711 were not legally published as required by Art. 16, § 1; that, because of the failure to comply with the constitutional mandate on publication, they may not "become part of the Constitution" by action of the 126th General Assembly.

■ With respect to H.B.No.711, it appears from your letter that the "original proposal of the Constitution Revision Commission was printed in full in each of the News-Journal papers" in June 1969; and that the Commission "held extensive well-advertised hearings in all three counties". Such publicity may be accorded no significance for present purposes. In addition to the basic proposition that different kinds of publicity, occurring at different times, may not be engrafted upon the constitutional provisions and substituted for the mandatory publication requirements of Art. 16, § 1, there are other reasons why publicity of the original proposals of the Constitution Revision Commission may not be deemed the equivalent of the constitutionally required publication of the text of H.B. No.711. Those reasons relate to the several significant changes made by the General Assembly and the resultant differences between the proposals of the Commission, on the one hand, and the proposed Amendments in H.B.No.711, on the other.

It appears that H.B.No.711 differed from the proposals of the Commission in the following important areas: trial by jury; qualifications of members of the General Assembly; legislative districting and redistricting; time and frequency of sessions of the General Assembly; vacancies in the General Assembly; immunity of members of the General Assembly; powers and duties of the Governor and of the Lieutenant Governor; age qualifications for voting; registration of voters; local governments; and the merit system. In view of differences such as these, it is manifest that publication of the proposals of the Constitution Revision Commission may not be deemed publication of H.B.No.711.

We also note that the proposed Amendments in H.B.No.711 were the subject of editorials, radio and television news reports and programs, campaign speeches, a published poll of the candidates, hearings by both houses of the General Assembly, and class discussions in the schools. Again the conclusion must be that such other and different types of publicity occurring at other and different times, as desirable as they may be as supplements in the amendatory process, are not legally acceptable substitutes for the mandatory publication of the texts of the Amendments. The requirements of Art. 16, § 1 may not be thus rewritten by any official, or any General Assembly, or any court.

The foregoing is the opinion of each of the undersigned.

Respectfully submitted,

DANIEL F. WOLCOTT
Chief Justice

JAMES B. CAREY

D. L. HERRMANN
Associate Justices