**LEGISLATIVE STUDY CLUB, INC.,**
Petitioner,

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent,**

Lawrence A. Monaco, Jr., Capitol Hill Restoration Society, Intervenors.

**No. 8756.**

District of Columbia Court of Appeals.

Argued Oct. 9, 1975.

Decided June 16, 1976.

Arthur L. Fox, II, Washington, D. C., for petitioner.

James N. Dulcan, Asst. Corp. Counsel, Washington, D.C., with whom C. Francis Murphy, Corp. Counsel, Washington, D.C., at the time the brief was filed, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D.C., were on the brief, for respondent.

---

Lawrence A. Monaco, Jr., Washington, D.C., for intervenors.

Before YEAGLEY and HARRIS, Associate Judges, and KORMAN, Associate Judge, Superior Court of the District of Columbia.*

YEAGLEY, Associate Judge:

This is a petition for review of a decision of the District of Columbia Board of Zoning Adjustment denying petitioner a certificate of occupancy to use a building in an R–4 zoning district in southeast Washington holding petitioner does not qualify as a private club. Finding that petitioner's contentions to the contrary are without merit, we affirm the judgment of the Board of Zoning Adjustment and dismiss the petition.

The property in question is located at 133 C Street, S.E., diagonally across the street from the United States House of Representatives' Cannon Office Building. It is zoned R–4, which includes row dwellings, conversions, apartments, and private clubs. The building was formerly occupied as a convent but had become vacant. Several persons who were to become the organizers of petitioner, the Legislative Study Club, were then operating as members or employees of Congress Watch or Citizen Action when they found this building and learned of its availability for an R–4 use. On August 14, 1973, they obtained articles of incorporation for a study club and on that date signed a lease for the premises and filed an application for a certificate of occupancy.

■ The "Club" is a nonprofit society organized to advocate and maintain the principles of citizen participation in government. It is composed of two internal organizations, Citizen Action, which prepares and publishes materials for public interest groups, and Congress Watch, a large public interest lobby. Of the "Club's" 21 or 22 "members" 12 or 13 are full-time salaried employees who work at the "clubhouse". Congress Watch and several of its members are registered lobbyists.

On August 14, 1973, the "Club" applied to the District of Columbia Department of Economic Development for a certificate of occupancy to permit it to use the building as a private club, a use permitted in the R–4 zone in which the building is located. The "Club" submitted with the application its articles of incorporation which had just been approved on the same date and a letter from its president which stated, *inter alia,* that the first floor was to be used for reception purposes and "limited office use" and that the second and third floors would be used for "offices, for a library and for conferences and meetings." On the basis of this information, the Zoning Administrator found the "Club" to be a private club within the R–4 definition and issued a certificate of occupancy. Mr. Lawrence Monaco, a nearby property owner, and the Capitol Hill Restoration Society, intervenors here, filed an "appeal" with the Board of Zoning Adjustment. After a hearing the Board reversed the Zoning Administrator's ruling, finding that petitioner did not meet the requirements of a private club under District regulations for R–4 zoning. We concur.

Section 3104.39 of the Zoning Regulations provides that an R–4 district may include, as a matter of right, a *"Private Club,* lodge, fraternity house, sorority house, or dormitory, except when such use is a service customarily carried on as a business." Petitioner asserts that since it is organized for "charitable, educational and scientific purposes" it fits within the provisions of an R–4 district and asserts the B.Z.A. has adopted an unduly restrictive interpretation which must be reversed on appeal. We do not agree. We view petitioner's efforts to meet the R–4 criteria by calling itself a private club as little more than a device

---

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

designed to circumvent the requirements of the Zoning Regulations.

The Board found that the Legislative Study Club is a nonprofit organization for the benefit of the public in general but not a private club for the social benefit of its members. There is ample evidence to support the decision of the Board. In its findings of fact and conclusions of law it said:

> The Zoning Commission has in the regulations defined both a "Private Club" and a "Non-profit Organization", and a review of the progression of permitted uses in the regulations indicates that a "Private Club" is a more restrictive use than a "Non-profit Organization" since they are first permitted in the R–4 and SP Districts respectively. The Commission would not have done so had they not intended a distinction. In our opinion the Legislative Study Club is a non-profit organization for the benefit of the public in general and not a private club for the social benefit of its members.

The Board arrived at this conclusion after examining the evidence and interpreting the definitions in its regulations regarding a private club and a nonprofit organization. Its interpretation is binding on this court unless it is plainly erroneous or inconsistent with the regulation. *Dietrich v. District of Columbia Board of Zoning Adjustment,* D.C.App., 320 A.2d 282, 286 (1974); *Taylor v. District of Columbia Board of Zoning Adjustment,* D.C.App., 308 A.2d 230, 232 (1973). Here there is a reasonable basis for the Board's interpretation and it will not be disturbed.

A private club is defined in § 1202 of the Zoning Regulations as *"a building* or portion thereof used by an association organized for the promotion of a common social objective and not for profit, where facilities are limited to its members and their guests. . . ." A nonprofit organization, on the other hand, is defined as "an organization organized and operated exclusively for religious, charitable, literary, scientific, community, or educational purposes . . . provided no part of its net income inures to the benefit of any private shareholder or individual." Both are nonprofit types of organizations, but there the similarity ends. In comparing the two definitions, it is readily apparent that "private club" was intended to cover personal, social matters, while "nonprofit organization" was aimed at nonpersonal, service-type activities. The Board said in its memorandum decision that the petitioner

> pursuant to its corporate purposes, operates as a clearing house for class groups by studying specific pieces of legislation and disseminating information to those groups regarding issues such as consumer affairs and public information. The Board reasons that the activities of the Legislative Study Club are vocational in nature as opposed to avocational activities connoted by the term common social objectives.

Groups falling within the definition of nonprofit organizations are not permitted in R–4 zoning districts. They are listed in the Zoning Regulations under SP (Special Purposes) districts for conversions of buildings (*see* D.C. Zoning Regs. § 4101.-35) and are not permitted in any residential district. To hold that an organization such as petitioner may, by the mere affixing of the word "club" to its name, change its status from that of a nonprofit "vocational" organization to that of a social club, so as to qualify for an occupancy permit in an R–4 district, would make a mockery of the Zoning Regulations and would destroy the careful distinctions drawn by the Zoning Commission. We hold that the Board ruled properly that the Zoning Administrator had erred in finding petitioner qualified as a club for occupancy in an R–4 zoning district.

Petitioner also alleges certain procedural errors on the part of the Board. It asserts first that the intervenors failed to carry

their burden of proof in the proceedings before the Board. We have read the transcript of the hearing and have examined the evidence submitted and conclude that, contrary to what petitioner contends, the intervenors did indeed meet their burden. The evidence included a certified copy of petitioner's articles of incorporation; a letter from the president of the "Club" advising that much of the space at the premises was to be used for offices; extracts from the Congressional Record showing that a lobbying organization (Congress Watch) had listed its address as that of the "Club's"; and testimony by Mr. Monaco as to the nature of the operations of the "Club". In addition, there was testimony from a witness who had visited the premises on invitation of members of the "Club", and discovered that the building was being used for "an office". He testified the private club status appeared to be a subterfuge to get around the Zoning Regulations. The foregoing evidence was ample to establish a prima facie case for intervenors.

■ Petitioner also asserts that the Board unlawfully denied it access to the Board's previous decisions construing the Zoning Regulations, in violation of D.C. Code 1973, § 1–1504 and Commissioner's Order No. 71–370 (Nov. 2, 1971) [*see* 18 D.C.Reg. 289 (Nov. 15, 1971)]. The request by petitioner for such records was made on March 25, 1974, when it filed its motion for reconsideration and reargument which was over 3 months after the Board's hearing was concluded. Petitioner specifically asked the Board for "a list, or preferably copies of all Board and Zoning Commission decisions over the past 15 years dealing with questions of what constitutes a 'private club' and a 'non-profit organization' within the meaning of the zoning regulations." It asserted that the Code and the Commissioner's Order required the furnishing of this material.[1]

Decisions of the Board, as well as minutes of its executive sessions, are public records and are available to the public at the Board office. Reproductions may be obtained at a nominal fee. Unfortunately no index has been maintained of these documents. What petitioner seeks is to compel the Board to compile such an index. As beneficial as that result might be, there is no requirement in any statute or order compelling the indexing of the Board's decisions. We are unable to find any law or rule, nor are we referred to any, that would require the Board to cull out of its records relevant decisions in order to provide petitioner with a list of cases, should there be any, concerning the definition of "private club" or "nonprofit organization."

Petitioner cites us to the recent Supreme Court case of *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed. 2d 29 (1975), noting that the Court in that case specifically required the N.L.R.B. to prepare an index of its "final opinions." What petitioner ignores in its analysis of the case is that the Court did this pursuant to a specific statutory provision. The Court relied upon 5 U.S.C. § 552(a)(2)(1970), which provides *inter alia* that "[e]ach agency . . . shall maintain and make available for public inspection and copying a current index providing identifying information for the public as to any matter issued, adopted, or promulgated after July 4, 1967. . . . " This section of the United States Code is not applicable to the Board since § 551(1)(D) specifically exempts from its provisions "the government of the District of Columbia." Nor is there any similar provision in either D.C. Code 1973, § 1–1504 or Commissioner's Order No. 71–370. Contrary to petitioner's assertion, the D.C.Code provision and the Commissioner's Order do not "closely parallel" the federal statute at all, especially in the area of keeping an index. There is no statute applicable to District zoning rec-

1. In addition, petitioner also requested the decisions pursuant to another Commissioner's Order—No. 68–211 (Mar. 19, 1968). However, this order was expressly repealed by Commissioner's Order No. 71–370 and is thus not relevant here.

ords which compels the keeping of an index.[2] Petitioner's argument that the absence of an index somehow renders the Board's decision void for lack of "fundamental" procedural due process is specious.

2. We note that on May 4, 1976, the Mayor promulgated Mayor's Order 76–109 [see 22 D.C.Reg. 6351 (May 14, 1976)] repealing Commissioner's Order No. 71–370 and establishing new procedures for obtaining official information from governmental agencies. It requires that the requested documents must

Finding no error in the proceedings before the Board of Zoning Adjustment, the order appealed from is

*Affirmed.*

be identified with such reasonable specificity as "will enable an agency employee to locate the . . . records . . . . " *See* § 1 (d). As in Commissioner's Order 71–370, there is no requirement compelling the making or keeping of an index.