Richard N. WOLF, Petitioner,

v.

DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent,

David J. DuBois, Intervenor.

No. 12122.

District of Columbia Court of Appeals.

Argued Oct. 16, 1978.

Decided Jan. 23, 1979.

---

Richard N. Wolf, pro se, with whom Robert J. Higgins, Washington, D. C., was on the briefs, for petitioner.

Richard W. Barton, Deputy Corp. Counsel and Dennis McDaniel, Asst. Corp. Counsel, Washington, D. C., entered appearances for respondent and adopted the brief of the intervenor.

Iverson O. Mitchell, III, Washington, D. C., with whom Norman M. Glasgow and Whayne S. Quin, Washington, D. C., were on the brief, for intervenor.

Before NEWMAN, Chief Judge, and YEAGLEY and MACK, Associate Judges.

MACK, Associate Judge:

This is an appeal from a decision of the District of Columbia Board of Zoning Adjustment granting an area variance. Petitioner has argued that the Board erred in holding the proposed variance to be one of area alone; that it also erred in finding, as a requisite for granting the variance, practical difficulties in conforming the subject property to zoning regulations; and that it erred in the procedure followed with respect to both the hearing and actual decision in the instant case. For reasons discussed herein, we affirm the Board's decision.

The structure for which the area variance was sought (by intervenor, David J. DuBois) is a two-family row dwelling located at 1115 Independence Avenue, S.E., in Philadelphia Row, in the Capitol Hill portion of

the city, denoted as the R–4 District for zoning purposes. The structure was constructed in 1912. It is located on a lot 2,164 square feet in size. It has three stories—a first and second floor plus a basement—with a gross floor area of 1,500 square feet per floor. The subject property is larger than any of the 70 of its neighboring houses within 200 feet. Moreover, of the 482 residential structures in the eight squares surrounding the subject property, only six are as large.

Mr. DuBois purchased the subject property in 1973. He planned a remodeling of the premises: the top two floors in a Victorian style, and the basement as an apartment unit. Prior to his purchase, the District of Columbia Board of Zoning Adjustment (BZA) had approved the premises for conversion into a four-unit apartment house. The approval for conversion by the BZA was contained in Application No. 9062, which resulted in the granting of a variance from the restrictions of zoning regulations. The variance exempted the subject property from the requirement of District of Columbia Zoning Regulations § 3301.1, that a minimum lot area of 900 square feet be provided for each dwelling unit on the premises.

Upon learning, subsequent to his purchase, that this approval for a variance had expired, Mr. DuBois applied to the BZA for a new variance to permit conversion of the premises into a three-unit apartment house. It appears that he may have been unfamiliar with BZA hearing procedure: he did not retain counsel, and he was not aware of the burden of proof he had in seeking a variance. The BZA denied intervenor's request for a variance in October 1973, pursuant to Application No. 11444.

Following the BZA's 1973 decision, intervenor engaged in a remodeling of the premises consistent with zoning regulations. The top floor of the structure was rented out as a single unit of 1,500 square feet; the first floor and basement were combined into another single unit of 3,000 square feet, with 12 rooms. The larger of these two units was finally rented in March of

1975, with the basement reserved as a place for roomers in an accessory use permitted by District of Columbia Zoning Regulations § 3101.53.

In 1976, Mr. DuBois, in Application No. 12278, again applied for an area variance for the subject property from § 3301.1 of the regulations. His aim, once again, was conversion of the premises from a two-to a-three unit structure. In furtherance of his application, intervenor was able to secure the support for a variance of the owners or residents of 52 of the 70 properties within 200 feet of the subject property, and also of the Capitol Hill Restoration Society, a civic group.

At the hearing held by the BZA on his application on February 16, 1977 Mr. DuBois, who testified on his own behalf, advanced four bases for the granting of a variance, to wit: 1) the exceptional size of the structure on the subject property; 2) the unique layout of that structure, which had a depth of about 80 feet; 3) the practical difficulties in the R–4 District of either renting the first floor and basement as a single 3,000 square foot apartment unit in a two-family dwelling as opposed to a single-family house, or of marketing the basement separately as a place for more transient tenants (i. e., roomers); and 4) the relationship of market and income to cost in connection with the use of the premises as a two-unit structure. In elaborating upon this fourth basis, intervenor offered evidence that his monthly expenses for the premises ran approximately $1,276 but that his monthly rent ran only $1,250: $500 for the top floor apartment, $450 for the first floor, and $300 for the basement. (These rents were consistent with the going market rate for properties similar in quality to the instant premises.) The projections offered by intervenor showed that, were the basement converted by means of an area variance from a rooming place into a third apartment unit, its monthly rent would amount to $400, thus raising rents for the premises to a level in excess of expenses for the premises. Intervenor's evidence also indicated that vacancy of the basement

would be greater were it to remain a rooming place rather than an apartment unit, and thus would be less likely to bring in any rent at all absent a conversion.

Mr. DuBois also offered testimony in support of his application from several parties. Anthony Reynolds, a real estate appraiser and consultant who had inspected the subject property, testified as an expert that the structure on the property was of a high quality of workmanship. He also testified that, given its size, layout, and two-family design as compared with the size and layout of its neighboring single-family houses, the structure had an anomalous character which generated practical difficulties in renting it within the restrictions of § 3301.1 of the zoning regulations' minimum lot requirements—*i. e.*, as a two-unit dwelling with an accessory area for roomers. Mr. Reynolds stated that the problems of renting out the structure as two units with a rooming area precipitated a loss in income to intervenor which in turn raised the possibility that the structure would suffer from a lack of maintenance. He further stated that the conversion of the basement from a rooming area to a third apartment unit would not increase the density of the structure on the subject property, or alter its exterior, or work an adverse effect on the market value of any nearby piece of property. Hence, Mr. Reynolds concluded that conversion of the structure to a three-unit apartment house would not undermine the character of the R–4 District. His conclusion was shared by several persons who resided near the subject property, and who testified on behalf of intervenor at the BZA hearing.

Petitioner was one of those living near the subject property who opposed intervenor's application for a variance. He did not appear at the hearing on the application but was represented by an attorney who offered to the BZA a letter from petitioner detailing his objections to the variance. The BZA accepted the letter into the record but denied counsel leave to read it aloud, believing that such oral direct evidence, in the absence of petitioner, would abridge the right of others to cross-examine.

Petitioner in his letter argued that the requested variance involved a change, hybrid in nature, as to use and area, that a dual showing of both "practical difficulties" and "undue hardship" was required, and that Mr. DuBois had not met his burden in this regard. Petitioner also argued that any difficulties or hardship incurred by Mr. DuBois with regard to the property were self-imposed and therefore as a matter of law not a proper basis for granting a variance,[1] and that the granting of such variance would endanger the general zoning scheme for the District, deprive him of light and air and adversely increase the density of the area. Finally he argued that intervenor's financial picture with respect to the property was better than it had been portrayed.

Petitioner's opposition to the proposed variance was shared by several Capitol Hill residents and by the Advisory Neighborhood Commission for the R–4 District, all of whom submitted letters against intervenor's application to the BZA.

In Order No. 12278, dated April 11, 1977, the BZA approved intervenor's application for an area variance. The BZA was of the opinion that the variance requested by intervenor was one of area, since the only requirement not met for a conversion as of right of the subject property was the one of 900 square feet per unit—*i. e.*, of area. The BZA also was of the opinion that intervenor had demonstrated "practical difficulties" sufficient for the granting of the area variance. In its decision, the BZA made fifteen findings of fact, all in essential agreement with intervenor's presentation and that of his supporting witnesses, as described herein. The BZA noted the existence of opposition to the granting of a variance in general terms.

From the BZA's order in the instant case, this petition for review followed.

---

1. *Taylor v. D. C. Bd. of Zoning Adjustment*, D.C.App., 308 A.2d 230 (1973).

## I.

In this court petitioner argues that the BZA acted contrary to applicable law in granting the challenged variance. We disagree. District of Columbia Zoning Regulations § 8207.11, adopted pursuant to D.C.Code 1973, § 5–420, circumscribes the power of the BZA to carve out variances from its regulated zoning schemes as follows:

8207.11 Where, by reason of exceptional narrowness, shallowness or shape of a specific piece of property at the time of the original adoption of the regulations or by reason of exceptional topographical conditions or other extraordinary or exceptional situation or condition of a specific piece of property, the strict application of any regulation adopted under this Act would result in peculiar and exceptional practical difficulties to or exceptional and undue hardship upon the owner of such property, to authorize, upon an appeal relating to such property, a variance from such strict application so as to relieve such difficulties or hardship, provided such relief can be granted without substantial detriment to the public good and without substantially impairing the intent, purpose, and integrity of the zone plan as embodied in the zoning regulations and map. ·

Consistent with D.C.Code 1973, § 5–420, § 8207.11 of the regulations, by use of the disjunctive "or," sets up separate statutory requisites to the granting of variances—*i. e.*, a showing of "practical difficulties" *or* "undue hardship." *Palmer v. Board of Zoning Adjustment*, D.C.App., 287 A.2d 535, 540 (1972). In its decision in the instant case, the BZA correctly noted that in *Palmer* we "adopted for this jurisdiction the dichotomy between area variances and use variances," applying the statutory requisite of "practical difficulties" to a showing of the former, and applying the separate statutory requisite of "undue hardship" to a showing of the latter. *Id.* at 541. We viewed the difference between the two kinds of variances as one of degree:

[A]n area variance, relating to restrictions such as side yard, rear yard, frontage, setback or minimum lot requirements, does not alter the character of the zoned district, whereas a use variance seeks a use ordinarily prohibited in the particular district. [*Id.*].

We therefore applied the more easily satisfied requisite of "practical difficulties" to a showing of the less sweeping of the two variances, the area variance. In the instant case, the BZA stated that only the failure of the subject property to conform to the minimum lot requirement of 2,700 square feet (or 900 square feet per unit for three units) prevented intervenor's securing conversion of his two-family flat into a three-unit apartment facility as a matter of right. The BZA found that the sole relief requested by intervenor related to the area of his lot, and so relying on *Palmer* employed the "practical difficulties" test appropriate to consideration of an area variance. In light of our holding in *Palmer*, we would be hard-pressed to overturn the findings of the BZA in the instant case, both as to the kind of variance requested and the requisite showing for its being granted.

The *Palmer* case represents as far as we choose to go in judicially defining area and use variance, or hybrids thereof. The determination of whether a variance is one of area, use, or something else, is not made easier, or more just, by resort to rigid typecasting for the purpose of establishing precedent in the law of zoning. "Some variances resist easy classification. A variance to reduce off-street parking requirements, for example, may be treated as an area variance, but it has also been termed a use variance." A. Anderson, American Law of Zoning Vol. 3 § 18.46 (2d ed. 1977). So it was that in *Palmer v. Board of Zoning Adjustment, supra* at 541, we held the off-street parking variance requested to be a hybrid of both use and area. The variance granted to intervenor in the instant case, however, was one for conversion of a row dwelling to accommodate three apartment units. No essential change in the use of the subject property—*i. e.*, from a multiple residence to something else—was contemplat-

ed; the fundamental change sought was one relating to minimum lot restrictions of the R–4 District. Therefore, the variance requested by intervenor fell under the rubric of area variances as defined by us in *Palmer*. In light of *Palmer*, then, we are not persuaded by petitioner's contention, that the variance granted by the BZA to intervenor was in truth a hybrid of both a use and an area variance which under the law required a showing of both undue hardship *and* practical difficulties.

Determinations with respect to the treatment and classification of proposed variances are best made, we think, on an ad hoc basis, by the agency from whose regulations those variances are sought. Judicial review with respect to those determinations is in general best made, we think, under the well established rule of deference to administrative expertise. "When we review the BZA's construction of regulations, which were adopted by the Zoning Commission, the BZA's interpretation is controlling unless it is plainly erroneous or inconsistent with the regulation." *Dietrich v. District of Columbia Board of Zoning Adjustment*, D.C.App., 320 A.2d 282, 286 (1974). *Accord, Taylor v. District of Columbia Board of Zoning Adjustment*, D.C.App., 308 A.2d 230, 233–34 (1973). The BZA in the instant case received evidence that the subject property was at the time of intervenor's application for a variance already an anomaly in its neighborhood—larger than any of the houses within 200 feet, with more than the average gross floor space, and constructed as a two- and not single-family flat. The BZA decided that, given the preexisting nature of the subject property, the proper variance for its conversion was one relating to area—*i. e.*, to a mere departure from minimum lot restrictions—and not to a radical change in the character of its use. "The Board arrived at this conclusion after examining the evidence and interpreting the definitions in its regulations . . . . Its interpretation is binding on this court unless it is plainly erroneous or inconsistent with the regulation." *Legislative Study Club, Inc. v. District of Columbia Board of Zoning Adjustment*, D.C.App., 359 A.2d 153, 155 (1976). Given the evidence presented to the BZA, we find its treatment of the proposed variance as one of area requiring a "practical difficulties" analysis, to have been devoid of plain error.

II.

Petitioner argues, nevertheless, that intervenor in the instant case did not make a showing of "practical difficulties" sufficient for the BZA to have granted him the requested area variance. "In determining whether to authorize a variance from the terms of the zoning ordinance because of special conditions making enforcement of the ordinance inequitable, a board of appeals is vested with a wide discretion unless it is abused." E. Yokley, Zoning Law and Practice Vol. 2 § 15–7 (3d ed. 1965). *See Red Lion Broadcasting Co., Inc. v. F.C.C.*, 395 U.S. 367, 381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969); *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Power Reactor Development Co. v. International Union of Electrical Radio & Machine Workers*, 367 U.S. 396, 408, 81 S.Ct. 1529, 6 L.Ed.2d 924 (1961); *Unemployment Compensation Commission v. Aragon*, 329 U.S. 143, 153, 67 S.Ct. 245, 91 L.Ed. 136 (1946); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413–14, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945); *Watergate Improvement Associates v. Public Service Commission*, D.C. App., 326 A.2d 778, 785 (1974). Determinations of whether "practical difficulties" exist, like determinations of whether the variance at issue is one of area or use, must be made case-by-case, and must be judicially reviewed under a rule of deference to administrative expertise. The ad hoc rule for determinations with respect to "practical difficulties" derives from *Palmer v. Board of Zoning Adjustment, supra* at 542: "The nature and extent of the burden which will warrant an area variance is best left to the facts and circumstances of each particular case." The rule of deference to agency action with respect to those determinations derives from *Taylor v. District of Columbia Board of Zoning Adjustment, supra* at 236: Where the BZA's factual findings on the

existence or not of "practical difficulties" are neither arbitrary nor capricious, they will be upheld on review. It is in light of *Palmer* and *Taylor* that we now examine the finding of the BZA, that "practical difficulties" did exist in the instant case.

 The BZA in its decision noted several factors which gave rise to "practical difficulties" for intervenor in conforming to the lot restrictions imposed by regulation in the R-4 District. The BZA indicated that the two-family character of the subject property made the marketability of its approximately 3,000 square feet as a single unit unfeasible, since the rental market for such a unit is normally restricted to single-family dwellings. The BZA also indicated that the structure of the subject property—specifically its large size, unique layout, and exceptional quality of workmanship—worked against its effectively functioning as a two-unit apartment house.[2] With respect to the renting of the basement of the subject property as a place for roomers accessory to the first floor apartment, the BZA pointed out that such a renting is generally restricted to single-family dwellings. Finally, the BZA noted that the monthly expenses incurred by intervenor for the subject property were approximately $1,276, but that the annual rental as computed monthly of two apartments and rooms would be about $1,250 (a loss), whereas such rental for three apartments would be about $1,350 (a return). This loss was only part of a larger loss growing out of a serious problem encountered in renting the 3,000 square foot unit as a single unit. In view of these particular facts and circumstances relating to the subject property, we believe that the finding made by the BZA of "practical difficulties" was neither arbitrary nor capricious, and so we affirm it.

2. The BZA in its decision correctly cited *Clerics of St. Viator, Inc. v. D.C. Bd. of Zoning Adjustment*, D.C.App., 320 A.2d 291, 294 (1974), for the proposition that an area variance may relate to practical difficulties attending the *structure* on the subject property, and not just the land itself. While *Clerics* involved a use variance, and its holding broadly speaks of variances, and its rationale, we agree, encompasses situations like the instant case in which an area variance is requested.

III.

(A) Also at issue in the instant case is whether the BZA made findings of fact as required by law. In particular, the argument is advanced by petitioner in his reply brief that the opposition of the Advisory Neighborhood Commission (ANC) 6B to the proposed area variance was not addressed by the Board as required under D.C.Code 1978 Supp., § 1-171i. That statutory section provides for the following:

(a) Each Advisory Neighborhood Commission . . . may advise the Council of the District of Columbia, the Mayor and Each Executive Agency and all independent agencies, boards and commissions of the government of the District of Columbia with respect to all proposed matters of District government policy including decisions regarding planning, streets, recreation, social services programs, education, health, safety and sanitation which affect that Commission area.

. . .

\* \* \* \* \* \*

(d) . . . . The issues and concerns raised in the recommendations of the Commission shall be given great weight during the deliberations by the governmental agency and those issues shall be discussed in the written rationale for the governmental decision taken.

We believe that the Board's findings were sufficient enough, and specific enough, to be in conformity with what the law required.

Recently, we discussed the requirement, in D.C.Code 1978 Supp., § 1-171i(d), that an independent agency of the District give "great weight" to recommendations of the ANC on a public policy proposal. *Kopff v. District of Columbia Alcoholic Beverage Control Board*, D.C.App., 381 A.2d 1372 (1977). We concluded that

. . . "great weight," as used in the ANC [§ 1–171i(d)] Act, does not build in some kind of quantum of presumption of deference to be accorded ANCs. It means, rather, that an agency must elaborate, with precision, its response to the ANC issues and concerns. It is a statutory method of forcing an agency to come to grips with the ANC view—to deal with it in detail, without slippage. [*Id.* at 1384.]

In *Kopff,* it was suggested that any agency, responding to recommendations of the ANC, need not, as part of its decision, particularize the source of those recommendations. *Id.* To the contrary, we held "that 'great weight' implies explicit reference to each ANC issue and concern *as such* as well as specific findings and conclusions with respect to each." *Id.* [Emphasis in original.]

It appears from the record in the instant case that the BZA in its decision did not make specific mention of the ANC's opposition to the area variance ultimately granted intervenor. Instead, the BZA found as fact that, "There was opposition registered at the Public Hearing on this application." The ANC opposition was in the form of a letter to the BZA dated January 10, 1977. The letter reprinted the resolution adopted by the ANC on the subject of the proposed variance, to wit:

RESOLVED, that Advisory Neighborhood Commission 6B *OPPOSES* the application of David J. Dubois for an area variance to permit conversion of 1115 Independence Avenue, S.E. from two to three units, in spite of the support of the residents for the applicant because permitting conversion of a house on a lot of under 2700 square feet to three units would be in conflict with the protection of the character of the area as provided by zoning.

The failure of the BZA in its decision to note with particularity the existence of the statement of the ANC may arguably constitute a departure from the literal requirements laid down in *Kopff* with respect to D.C.Code 1978 Supp., § 1–

171i(d); nevertheless, we believe that the findings of fact by the BZA in the instant case were legally sufficient. The decision of the BZA in the instant case was made on March 8, 1977, and so preceded our decision in *Kopff,* which was made on December 20, 1977. We have previously held that

for administrative decisions rendered prior to the guidance afforded by *Kopff,* strict adherence to the specific requirements of that opinion not only might serve no substantive purpose but could well result in inequity. . . . [T]he sensible and equitable approach is to require substantial compliance with D.C. Code 1978 Supp., § 1–171i(d) for cases in which the administrative decision preceded the date of that opinion. [*Wheeler v. District of Columbia Board of Zoning Adjustment,* D.C.App., 395 A.2d 85, 90 (1978).]

By "substantial compliance" with § 1–171i(d), we meant " 'such compliance with [the] essential requirements of the . . provision as may be sufficient for the accomplishment of the purposes thereof.' " *Opinion of the Justices,* 275 A.2d 558, 562 (Del.1971), *quoted in Wheeler v. District of Columbia Board of Zoning Adjustment, supra,* at 90. It appears to us from the record that such compliance with the provisions of § 1–171i(d) was achieved by the BZA in the instant case. The sole concern identified by the ANC in its letter of opposition to the area variance was whether "permitting conversion of a house on a lot of under 2,700 square feet to three units would be in conflict with the protection of the character of the area as provided by zoning." That concern was specifically addressed by the members of the BZA in their decision granting intervenor the variance:

[S]ince there will be no substantial changes and no substantial increase in density, we see no likelihood of an adverse effect on the neighborhood. We believe that the grant is in keeping with the intent of the Zoning Regulations and Maps.

The failure of the BZA to identify the ANC as the *source* of the aforementioned concern

clearly did not prevent the Board from coming "to grips" with that concern in its findings. The BZA, then did "elaborate, with precision, its response to the ANC issues and concerns," and so, in our judgment, acted in substantial compliance with D.C. Code 1978 Supp., § 1–171i(d).

(B) Petitioner's broad contention with respect to the BZA's findings of fact is that they were insufficient under the law. The Administrative Procedure Act of the District of Columbia defines the form such findings must take:

> The findings of fact shall consist of a concise statement of the conclusions upon each contested issue of fact. Findings of fact and conclusions of law shall be supported by and in accordance with the reliable, probative, and substantial evidence. [D.C.Code 1973, § 1–1509(e).]

It is clear from the record that the BZA did address with specificity those facts contested in the instant case. Petitioner argued in his letter to the BZA that granting intervenor an area variance to proceed with his plan for three apartment units on the subject property would work a deleterious increase in the density of the R–4 District. The BZA in its decision, however, noted that density would be greater if the basement of the subject property remained a place for from four to five roomers than if conversion of the basement into a third apartment unit were allowed. Petitioner argued that the primary purpose behind the intervenor's request for a variance was to reap a rate of return more handsome than that of other property owners in the R–4 District who had likewise engaged in renovation efforts. The BZA, however, indicated that conversion of the basement into a third apartment unit would work only a slight increase in income and a marginal profit to intervenor, permitting him just enough money to continue his maintenance of the subject property.

▋ With regard to petitioner's argument that enlargement of the subject property to three apartment units would deprive him of light and air, the BZA noted that conversion of the structure by means of an area variance would not require any exterior and only minor interior changes. The BZA's responses to the contentions raised on the record, added to its analysis of the practical difficulties of intervenor's situation, convinces us that the decision of the agency in the instant case granting an area variance was based upon substantial evidence, as required.[3]

## IV.

▋ Finally, petitioner maintained that the decision of the BZA not to allow his counsel at the hearing to read into the record his prepared statement of opposition to the granting of a variance as his direct testimony was reversible error. The BZA interpreted 22 DCRR 4.61 as barring the oral introduction of the statement, where petitioner was absent from the hearing on the instant case and hence unavailable for cross-examination.[4] The BZA, however, did permit the introduction of the same statement into the record of the case, absent an oral reading. In view of the fact that the statement was not totally excluded as evidence in the instant case, we believe the BZA's interpretation of its own rule of practice, 22 DCRR 4.61, not to be reversible error. Under the rule of *Dietrich v. District of Columbia Board of Zoning Adjustment, supra,* and *Taylor v. District of Columbia Board of Zoning Adjustment, supra,* regarding judicial deference to administrative interpretations of administrative regulations, we affirm as absent plain error the

---

3. The BZA in its decision did not address the argument of petitioner, that intervenor's hardship with respect to the subject property was self-imposed and therefore not a proper basis for securing a variance, under *Taylor v. D.C. Bd. of Zoning Adjustment, supra.* The BZA was not in error in not addressing this argument, since the rule of *Taylor* as to self-im-

posed hardship does not apply in the case of an area as opposed to a use variance. *A.L.W., Inc. v. D.C. Bd. of Zoning Adjustment,* D.C. App., 338 A.2d 428, 431–43 (1975).

4. 22 DCRR 4.61 reads as follows:
 Every party may appear at a hearing to offer evidence and cross-examine.

**946**

construction afforded 22 DCRR 4.61 by the BZA.[5]

### CONCLUSION

We have carefully examined all of petitioner's contentions relating to the decision of the BZA in the instant case, and conclude that they are unpersuasive. The decision of the Board is therefore

*Affirmed.*

---

**5.** We also note, that the attempt by petitioner's counsel at the hearing to represent himself as both petitioner's lawyer and agent so as to qualify himself to read petitioner's statement aloud as testimony and face cross-examination in petitioner's place was inconsistent with the American Bar Association Code of Professional Responsibility. *Shay v. D.C. Bd. of Zoning Adjustment,* D.C.App., 334 A.2d 175, 178 n.8 (1975). Ethical Consideration 5–9, ABA Code of Professional Responsibility (1972) reads as follows:

Occasionally a lawyer is called upon to decide in a particular case whether he will be a witness or an advocate. If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another while that of a witness is to state facts objectively.